## S13A0937. JACKSON v. THE STATE.
(751 SE2d 63)

MELTON, Justice.

Following a jury trial, Anastasia Jackson was found guilty of felony murder, armed robbery, two counts of aggravated assault with a deadly weapon, criminal attempt to commit armed robbery, conspiracy to commit armed robbery, and possession of a firearm during the commission of a felony. On appeal, she contends that the trial court failed to instruct the jury on the corroboration of accomplice witness testimony, that she was prohibited from exploring the bias of one of the State's witnesses, that trial counsel rendered ineffective assistance, and that the evidence was insufficient to support the verdict.[1] For the reasons set forth below, we affirm.

---

[1] On February 20, 2009, Jackson was indicted for malice murder, felony murder predicated on aggravated assault, two counts of aggravated assault with a deadly weapon, armed robbery, criminal attempt to commit armed robbery, conspiracy to commit armed robbery, and possession of a firearm during the commission of a felony. One count of aggravated assault related to the assault of Alton Sewell, and the remaining count related to the assault of Travaris Hardy. Following a jury trial ending on February 8, 2010, the jury acquitted Jackson of malice murder but found Jackson guilty of all other counts. The trial court sentenced Jackson to life imprisonment for felony murder, twenty consecutive years for armed robbery, ten consecutive years for conspiracy to commit armed robbery, and five consecutive years probation for possession of a firearm. The remaining counts were merged for purposes of sentencing. Jackson's trial counsel filed a motion for new trial on February 19, 2010, and new appellate counsel filed an amended motion on September 1, 2011. The motion was heard on September

1. In the light most favorable to the verdict, the record shows that, on October 10, 2008, Jackson traveled from Mobile, Alabama to Atlanta, Georgia and contacted her cousin, Travaris Hardy, to broker a deal for her to buy cocaine from Alton Sewell. Arriving in Atlanta, Jackson met her friend and drug business cohort, Larry Kennedy, who is also from Mobile, at a hotel room. Jackson then left the hotel room without Kennedy, picked up Hardy, and went to a gas station pre-arranged by Sewell as the location of the drug deal.

Parking behind Sewell's four-door truck at one of the gas pumps, Jackson got out of the car to get a small package from the trunk and got in the front passenger's side of Sewell's truck. Hardy got into the back seat of Sewell's truck. As Jackson and Sewell were making the drug deal, a black sedan pulled in front of Sewell's truck, and two gunmen jumped out of the car, advancing toward the truck. Both Jackson and Hardy exited the truck; Jackson jumped into the driver's seat of her car, while Hardy was apprehended by one of the gunmen, held on the ground at gunpoint, and robbed. The other gunman went to the driver's side of the truck, put a gun to Sewell's head, and robbed Sewell. Once Hardy was let go, he heard a gunshot and saw one of the gunmen run toward Jackson's car. The gunmen's sedan was seen following Jackson's car as both vehicles sped away from the gas station. Sewell later died of a gunshot wound.

The same night after the robbery and shooting, Hardy called Jackson to accuse her of setting up the robbery. During the phone call, Jackson responded to the allegations, stating, "I had to do what I had to do" and "I got to eat." Jackson also assured Hardy that he would get his money back and later wired Hardy the money. Both Jackson and Hardy identified Kennedy as the shooter. The evidence indicates that both Jackson's and Kennedy's mobile phones were being used in the vicinity of the gas station around the time of the shooting and that Jackson called Kennedy immediately after the shooting. The evidence also shows that Jackson and Kennedy continued their business dealings with one another for some time after the shooting.

This evidence was sufficient to enable the jurors to find Jackson guilty of the crimes for which she was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

---

8, 2011, and the trial court denied the amended motion on October 17, 2011. Thereafter, Jackson filed a timely notice of appeal, and, after payment of costs on April 2, 2013, her case was docketed to the April 2013 term of this Court and submitted for decision on the briefs.

2. Jackson contends that the trial court erred in failing to instruct the jury that Hardy's testimony required external corroboration under former OCGA § 24-4-8.[2] Where no objection is made to a jury charge at trial, "appellate review for plain error is required whenever an appealing party properly asserts an error in jury instructions." (Footnote omitted.) *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011).

> The "plain error" test adopted by this Court in [*Kelly*] authorizes reversal of a conviction if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity or public reputation of judicial proceedings.

(Citation omitted.) *Smith v. State*, 292 Ga. 316, 319 (3) (737 SE2d 677) (2013). Assuming without deciding that Hardy could be considered an accomplice, the trial court's failure to instruct the jury on corroboration of Hardy's testimony was not clear error. In felony cases where the witness is an accomplice, former OCGA § 24-4-8 requires either independently corroborating circumstances or more than one corroborating witness to authorize a conviction. Where an accomplice witness's testimony is independently corroborated, a jury instruction on corroboration is not required, whether or not the charge was requested by counsel. See *Hall v. State*, 241 Ga. 252 (7) (244 SE2d 833) (1978); *Tamplin v. State*, 235 Ga. 20 (3) (218 SE2d 779) (1975).

Corroborating evidence must show that Jackson was a party to the crime for Jackson to be convicted. See OCGA § 16-2-21; *Walsh v. State*, 269 Ga. 427, 429 (1) (499 SE2d 332) (1998). Participation in a crime may be inferred entirely from circumstantial evidence or from "presence [at the scene of a crime], companionship, and conduct before and after the offense." (Citations and punctuation omitted.) *Powell v. State*, 291 Ga. 743, 744-745 (1) (733 SE2d 294) (2012); see also *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996). In this case, there was sufficient evidence to enable the jury to conclude that Jackson was a party to the robbery. First, testimony established that, on the day of the robbery, Jackson and Kennedy met both before and immediately following the robbery. Second, Jackson's own testimony established that, prior to the robbery, she and Kennedy worked

---

[2] The provision in former OCGA § 24-4-8 has been carried forward into the new Evidence Code, renumbered based on the Federal Rules of Evidence, as OCGA § 24-14-8. Because the new Evidence Code was effective only as of January 1, 2013, however, it does not apply in this case, and, for that reason, we cite the old Code section.

together in the drug business and had made several other drug purchases in increasing quantities from Sewell. Her testimony also established a continuing drug business relationship with Kennedy in the months following the robbery. Third, cellular phone records indicated not only that Jackson and Kennedy were both in the vicinity of the robbery when it occurred, but also that Kennedy was the first person Jackson called immediately after the robbery. Fourth, eyewitness testimony established that the gunmen apprehended and robbed Hardy, but allowed Jackson to escape the scene unmolested. Fifth, eyewitness testimony established that the gunmen's black sedan followed closely behind Jackson's car as they sped away from the crime scene. Sixth, when confronted by Hardy about her complicity in the robbery, Jackson replied that she "got to eat." Lastly, the evidence indicated that Jackson sent Hardy the amount of money taken from him during the robbery. Because we find that this evidence satisfies the requirement that an accomplice's testimony must be independently corroborated, the rule in former OCGA § 24-4-8 is also satisfied, and no jury instructions were required. See *Hall*, supra, 241 Ga. at 257-258 (7).

3. Jackson next contends that the trial court erred in prohibiting her from fully exploring Hardy's bias in favor of the State. The trial court allowed evidence of Hardy's four prior felony convictions and two pending felony charges, but the court did not allow Jackson to cross-examine Hardy on details of the stiff recidivist penalties he possibly faced for the two pending cases.

"[T]he potential bias or partiality of a witness may always be explored on cross-examination." *Carswell v. State*, 268 Ga. 531, 535 (5) (491 SE2d 343) (1997), citing *Davis v. Alaska*, 415 U. S. 308, 315 (94 SCt 1105, 39 LE2d 347) (1974). Where the witness has obtained a concrete benefit for his testimony, the witness's credibility may be challenged by exploring possible penalties for pending criminal charges as a way of gauging the impact of the benefit upon the witness. See *State v. Vogleson*, 275 Ga. 637 (1) (571 SE2d 752) (2002). However, where the witness has not obtained such a benefit, and the accused is permitted broad scope in exposing the potential for bias in the witness's testimony, the accused may not bring out the potential penalties faced by the witness. *Howard v. State*, 286 Ga. 222, 224-226 (2) (686 SE2d 764) (2009); *Watkins v. State*, 276 Ga. 578 (3) (581 SE2d 23) (2003). Here, the record reveals that Hardy had no deal with the State to exchange his testimony for a reduced sentence. Although Jackson was not allowed to question Hardy on the potential penalties he faced for his pending charges, Jackson was "allowed to amply

explore [Hardy]'s potential for bias or partiality, and thus, his credibility."[3] (Citation omitted.) *Hodo v. State*, 272 Ga. 272, 275 (4) (528 SE2d 250) (2000). There was no error.

4. Jackson further contends that she was denied her right to effective counsel at trial. To prevail on this claim, Jackson must show both that her counsel's performance was so deficient as to fall below an objective standard of reasonableness and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (III) (104 SCt 2052, 80 LE2d 674) (1984). The reviewing court does not have to examine both prongs of the *Strickland* test if the defendant makes an insufficient showing on one of the prongs. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In meeting her burden, Jackson must overcome the strong presumption that her trial counsel's performance falls within the broad range of reasonable conduct by affirmatively showing that the deficiency was the result of ineffectiveness rather than of deliberate trial strategy. *Wiggins v. State*, 280 Ga. 627 (2) (632 SE2d 80) (2006); *Morgan v. State*, 275 Ga. 222 (10) (564 SE2d 192) (2002). In reviewing the trial court's decision, " '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Jackson argues that trial counsel was ineffective in failing to request a jury charge on the corroboration requirement for accomplice testimony under former OCGA § 24-4-8. This argument fails, because the support of the circumstantial evidence discussed in Division 2, supra, as well as other witness testimony against Jackson presented at trial, made the instruction unnecessary. See Division 2, supra.

(b) Jackson next maintains that trial counsel was ineffective in failing to obtain a copy of the recidivist notice filed against Hardy. A recidivist notice indicates the prosecution's intention to consider past convictions for enhanced sentencing purposes. OCGA § 17-16-4 (a) (5). The notice does not ensure that the State will indict the accused as a recidivist or that the accused will receive the enhanced recidivist sentence. See *Kinsey v. State*, 219 Ga. App. 204 (2) (464 SE2d 648)

---

[3] The trial court ruled:

What you can argue to the jury is, he's obviously got these two cases, and he is trying to curry favor with the government. . . . My ruling is, you are entitled to go into his motive for possibly fabricating testimony in favor of the government in order to curry favor for purposes of sentencing. But, beyond that, into what the potential sentences are or could be, I am not going to let do you [sic] that.

(1995). Because a recidivist notice indicates only possible sentences, and because the trial court ruled that no inquiry into such possible penalties was allowed in Hardy's cross-examination, there is no likelihood of prejudice to Jackson as a result of her counsel's failure to obtain the notice. Thus, Jackson's argument for the ineffectiveness of her counsel fails in this case.

(c) Lastly, Jackson attests her trial counsel was ineffective for failing to object to misstatements made during the State's closing argument. Jackson first contends that Hardy testified only that he saw the gunman run toward Jackson's car after the robbery, but the State in closing argument claimed Hardy said one of the gunmen *jumped into* Jackson's car following the robbery. Our review of the record reveals that Hardy testified that the gunman jumped into Jackson's car, even though his averred basis for this claim was that the gunman ran toward the car. Jackson next contends that the State mistakenly stated that Jackson admitted her involvement in the robbery to Hardy, but our review of the record fails to uncover any such statement made by the State. In Jackson's final volley against the State's closing argument, she claims that the State impermissibly argued that when Hardy says "probably" he means "actually" or "definitely." A prosecutor may draw reasonable inferences from the evidence during closing arguments. *Scott v. State*, 290 Ga. 883 (2) (725 SE2d 305) (2012). Here, evidence from the record supports the State's inference that, in some contexts, when Hardy uses the word "probably," he is "trying to communicate . . . exactly what happened."

None of the allegedly improper statements enumerated by Jackson fall outside the permissible scope of the State's conduct in closing argument. Thus, Jackson's trial counsel's performance was not deficient for failing to object to the alleged misstatements and, therefore, counsel was not ineffective.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 4, 2013.

*Alixe E. Steinmetz*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Arthur C. Walton, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ryan A. Kolb, Assistant Attorney General*, for appellee.