294 Ga. 791
FINAL COPY

S13A1696. HAMM v. THE STATE.

HUNSTEIN, Justice.

Appellant Antonio Hamm was convicted of murder and related offenses in connection with the December 14, 2008 shooting death of J. Remedios Ruiz-Mendieta. Hamm appeals the denial of his motion for new trial, contending that the trial court erred by failing to give certain jury instructions requested by defense counsel. Finding no reversible error, we affirm.[1]

---

[1]A Clayton County grand jury indicted Hamm in June 2010 on one count of malice murder, three counts of felony murder, two counts of aggravated assault, one count of aggravated battery, one count of firearm possession during the commission of a felony, one count of trafficking of persons for sexual servitude, one count of kidnapping, and one count of attempted murder of a witness in an official proceeding. At the conclusion of a jury trial held October 3-11, 2011, Hamm was convicted of malice murder, two of the felony murder counts, one aggravated assault count, aggravated battery, and firearm possession. The jury acquitted Hamm of the second aggravated assault count, and the trial court directed a verdict of not guilty on the felony murder count predicated thereon. The jury also acquitted Hamm of the charges of kidnapping and trafficking of persons for sexual servitude. The trial court directed a verdict of not guilty on the attempted murder of a witness charge. Hamm was sentenced to life imprisonment for malice murder plus a consecutive five-year term for firearm possession, with the remaining convictions either merged or vacated by operation of law. Hamm filed a motion for new trial on October 31, 2011, which was amended by new appellate counsel on February 28, 2013. The trial court held a hearing on the motion on April 30, 2013 and denied the motion that same day. Hamm filed a notice of appeal on May 24, 2013. The case was docketed to the September 2013 term of this Court and was thereafter submitted for decision on the

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows. On the morning of December 14, 2008, Hamm was at his grandmother's home in the Regal Park apartments in Forest Park with Brittany O'Kelly. O'Kelly, who testified for the State, testified that Hamm had taken an Ecstasy pill and began behaving erratically, threatening her with a large black gun and demanding that she prostitute herself to earn money with which he could purchase more drugs. O'Kelly walked to a nearby gas station, where she came upon Ruiz-Mendieta, who engaged her services. The two drove back in the victim's vehicle to the Regal Park complex and exited the car, heading for a vacant apartment. O'Kelly testified that Hamm then appeared, pointing a gun at the victim, who tried to grab the gun. O'Kelly ran away and, after hearing gunshots, reversed course to try to assist the victim. Hamm intercepted her and forced her back into his grandmother's apartment, where he required her to change clothes. The victim died at the scene from his gunshot wounds.

Hamm's brother-in-law, Damian Mitchell, testified that Hamm called him

---

briefs.

2

on the evening of December 14, 2008, imploring Mitchell to come pick him up at the Regal Park apartments "as soon as possible." Mitchell picked up Hamm and O'Kelly and ultimately drove them back to his home for the night. The following morning Hamm's brother, Raymond, drove Hamm and O'Kelly to a recording studio with which both Hamm brothers had business connections. According to O'Kelly, on the way to the recording studio, Hamm told his brother that he had killed a man. Hamm and O'Kelly stayed at the recording studio for several days thereafter, where, O'Kelly testified, Hamm kept her under close watch, prevented her from leaving, and threatened to kill her if she told anyone about the shooting.

Once news of the murder became public, Raymond drove Hamm and O'Kelly to West Point, Georgia to relocate. During the drive to West Point, O'Kelly testified, Raymond and Hamm threatened to harm her and her grandfather, who lived in West Point, if she told anyone about the murder.[2] While in West Point, O'Kelly testified, Hamm forced her to prostitute herself to earn money to pay for lodging. They eventually took up residence in a vacant

_____

[2] Raymond Hamm was also indicted on one count of threatening a witness in an official proceeding and was tried jointly with his brother, but the trial court directed a verdict in his favor at the close of the State's case.

3

home, where they were discovered by the property owner, Aberdella Scott, who allowed them to stay and brought them food from time to time. Scott testified that she witnessed Hamm bullying O'Kelly and that she saw two guns, one silver and one black, in Hamm's possession.

On the morning of February 8, 2009, Hamm shot O'Kelly in the head and arm with a silver handgun after she threatened to leave. Once at the hospital out of Hamm's presence, O'Kelly told police about the shooting of Ruiz-Mendieta. During Hamm's interview with West Point police in the aftermath of O'Kelly's shooting, police discovered there was an arrest warrant outstanding for Hamm in connection with the Ruiz-Mendieta shooting, and Hamm was arrested.

At trial, in addition to the above, the State adduced the testimony of Ronald Daniel, a friend of Hamm, who testified that he was at Regal Park with Hamm and O'Kelly watching football on the day of the Ruiz-Mendieta shooting. Daniel testified that at one point Hamm emerged from a bedroom and told Daniel that "his girl [O'Kelly] had a lick set up." Daniel testified that a "lick" meant a robbery, and that Hamm asked whether Daniel wanted to accompany him. Daniel testified that he declined, at which point Hamm left the apartment. According to Daniel, approximately 20 to 30 minutes later Hamm returned with

4

O'Kelly, and Hamm was carrying an AK-47, which Daniel had seen in Hamm's possession on prior occasions. Daniel testified that Hamm said he had "tried to rob . . . the amigo" but that he had to shoot when the victim grabbed for the gun. Daniel further testified that Hamm asked him to hold the AK-47 at Daniel's apartment upstairs, that Daniel initially agreed to do so and took the gun upstairs, and that he then changed his mind and took the gun back to Hamm.

A resident of the Regal Park apartments testified that, on the day of the shooting, she observed a black woman and an Hispanic man in the parking lot exiting a truck and walking toward the apartment building. A short time later, this witness testified, she heard a gunshot. The State also adduced that a spent 7.62 caliber shell casing was recovered from the scene of the Ruiz-Mendieta shooting and that an AK-47 is capable of firing that model of bullet.

1. Though Hamm has not enumerated the general grounds, we find that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Hamm was guilty of all the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Hamm contends that the trial court erred in declining to instruct the

5

jury, at his request, regarding the need for corroboration of an accomplice's testimony. As we have explained, under former OCGA § 24-4-8,[3]

> [i]n felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient and must be supported by the testimony of at least one other witness or by "corroborating circumstances." The additional evidence may be circumstantial and it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty.

(Citations and punctuation.) Johnson v. State, 288 Ga. 803, 805 (2) (708 SE2d 331) (2011); see also Kesler v. State, 249 Ga. 462, 465 (2) (291 SE2d 497) (1982) (to corroborate accomplice's testimony, State must adduce independent evidence as to "the identity and participation of the defendant"). Hamm claims that the bulk of the testimony implicating him as Ruiz-Mendieta's assailant came from O'Kelly; that Daniel's testimony supports a finding that O'Kelly was actually an accomplice in the shooting; and that therefore the trial court should have given his requested instruction on corroboration of an accomplice's testimony.

"To authorize a requested jury instruction, there need only be slight

---

[3] Under the new Georgia Evidence Code, effective for trials conducted on or after January 1, 2013, this concept is now codified at OCGA § 24-14-8.

6

evidence supporting the theory of the charge." Hicks v. State, 287 Ga. 260, 262 (2) (695 SE2d 195) (2010); accord Scott v. State, 291 Ga. 156 (2) (728 SE2d 238) (2012); Webb v. State, 284 Ga. 122 (4) (663 SE2d 690) (2008). It is a question of law whether the evidence presented is sufficient to authorize the giving of a particular charge. Hicks, 287 Ga. at 262. Thus, where a particular charge is requested, it is the duty of the trial court to determine whether there is slight evidence to support the charge. In this case, implicit in the trial court's refusal to give the charge Hamm requested was the conclusion that there was not even slight evidence to support it. In fact, earlier in the trial when ruling on Hamm's motion for directed verdict, the trial court had expressly stated that it "did not find that [O'Kelly] was an accomplice in this case. And so . . . there is no requirement of corroboration for her testimony."

Contrary to this conclusion, however, there was evidence to support a finding that O'Kelly was an accomplice: Daniel testified that Hamm told him O'Kelly had "set up a lick,"[4] and O'Kelly admitted to having brought the victim

---

[4] Though the State characterizes Daniel's testimony in this respect as "self-serving hearsay" lacking in probative value, Hamm's statement was admissible as an admission against interest and therefore cannot be disregarded as the State contends. See Teal v. State, 282 Ga. 319 (3) (647 SE2d 15) (2007).

7

to the scene of the shooting by offering to engage in sexual acts, to fleeing the scene immediately after the shooting, to leaving town in its aftermath, and to failing to report the crime until both she and Hamm had been found by investigators. Such evidence is clearly the type of evidence our courts view as supporting the finding that one is an accomplice. See, e.g., Jones v. State, 268 Ga. 12 (1) (483 SE2d 871) (1997) (witness' presence at crime and subsequent flight can support finding that witness was an accomplice); Jones v. State, 242 Ga. 893 (1) (252 SE2d 394) (1979) (witness' presence, companionship, and conduct after the crime are circumstances from which her intent to participate in a criminal act can be inferred).

Given this evidence, it was error for the trial court to refuse to give the requested instruction. Whether O'Kelly was an accomplice, and the weight to be afforded her testimony if she was, should have been submitted for the jury's determination. See Johnson, 288 Ga. at 806-807 (trial court properly submitted to the jury the question of whether witness who pled guilty was an accomplice, rejecting contention that trial court should have made determination as a matter of law); Jones, 268 Ga. at 14 ("it is for jury to determine whether the witness is an accomplice") (Citation and punctuation omitted). Cf. Yeomans v. State, 229

8

Ga. 488 (5) (192 SE2d 362) (1972) (no error in failing to give charge on accomplice corroboration where there was <u>no</u> evidence that the witness in question was an accomplice in the crime charged).

We acknowledge that this holding stands at odds with precedent from this Court establishing that there is no error in declining to give an instruction on accomplice corroboration, even if such a charge is requested, where the accomplice's testimony is in fact corroborated by independent evidence. See <u>Fleming v. State</u>, 269 Ga. 245 (2) (497 SE2d 211) (1998) (no reversible error in trial court's failure to give requested instruction on accomplice corroboration where State relied in part on defendant's statements to police); <u>Hall v. State</u>, 241 Ga. 252 (7) (244 SE2d 833) (1978) (no error in declining defendant's request to charge on accomplice corroboration where State relied on testimony of other witnesses as well); see also <u>Jackson v. State</u>, 294 Ga. 34, 36 (2) (751 SE2d 63) (2013) (stating in dicta that an accomplice corroboration instruction is not required, even when it is requested, where the accomplice's testimony is in fact independently corroborated).[5] This line of precedent appears to have originated

_____

[5] The same principle has been reiterated in other cases where it is unclear from the Court's opinion whether or not the instruction was requested. See <u>Jones v. State</u>, 270 Ga. 25 (4) (505 SE2d 749) (1998); <u>Jenkins v. State</u>, 268 Ga. 468 (9) (491 SE2d

with <u>Hall v. State</u>, supra, in which this Court held that the trial court had not erred in refusing to give the requested instruction, on the ground that "there were other witnesses to the crime so that the State did not rely solely on [the alleged accomplice's] testimony" and thus OCGA § 24-4-8 was inapplicable. Id. at 257.[6]  In other words, <u>Hall</u>'s holding implied that, because there was evidence at trial sufficient to corroborate the alleged accomplice's testimony and thus satisfy OCGA § 24-4-8, there was no need to instruct the jury on the accomplice corroboration requirement.

However, what the <u>Hall</u> Court failed to recognize is that the sufficiency of the evidence corroborating an accomplice's testimony, including whether the State has presented other witnesses to the same material facts as the accomplice,

---

54) (1997).  Numerous cases from our Court of Appeals have also followed this rule. See, e.g., <u>Kegler v. State</u>, 317 Ga. App. 427 (4) (731 SE2d 111) (2012) (no error in failing to give charge where State relied on other evidence in addition to accomplice's testimony); <u>Laing v. State</u>, 304 Ga. App. 15 (2) (695 SE2d 363) (2010) (no error in declining defendant's request to charge on accomplice corroboration where State relied on defendant's statement and other evidence); <u>Cochran v. State</u>, 300 Ga. App. 92 (3) (684 SE2d 136) (2009) (no error in declining defendant's request to charge on accomplice corroboration where State relied on other evidence); <u>Meredith v. State</u>, 148 Ga. App. 853 (6) (253 SE2d 220) (1979) (same).

[6] We note that the <u>Hall</u> Court cited no authority directly supporting this holding, instead offering only a "cf." citation to three cases (only one from this Court) in which this instruction was apparently not requested.

is an inquiry entirely distinct from whether a jury charge on the principle of accomplice corroboration is warranted. As noted above, it is well-established that requested jury instructions must be given whenever there is "slight evidence" to support them. See Hicks, 287 Ga. at 262. Where, as here, there is slight evidence supporting a finding that a witness was an accomplice, the jury should be given proper guidance not only on how to decide whether the witness was in fact an accomplice but also on the extent to which it can rely on that witness' testimony by itself to support a conviction. As then-Chief Justice Benham noted in dissent in Fleming v. State, supra,

> the mere fact that there is other evidence which could serve as corroboration does not dispense with the need for the requested charge because the jury, as the exclusive judges of credibility, could have rejected the other evidence and convicted solely on the accomplice's testimony.

269 Ga. at 250 (Benham, C. J., dissenting). A trial court's failure to give the instruction where the State relies in part on the testimony of a possible accomplice thus leaves open the possibility of a conviction in violation of OCGA § 24-4-8.

11

Accordingly, we now overrule Hall v. State, supra, and its progeny,[7] to the extent these cases hold that it is not error for a trial court to refuse to give a requested instruction on accomplice corroboration so long as the State relies in part on other evidence connecting the defendant to the crime. In so doing, we reaffirm the pre-Hall Court of Appeals line of cases holding that the failure to give such an instruction, when it is requested, is error. See Herrin v. State, 138 Ga. App. 729, 735 (11) (227 SE2d 498) (1976) (opining that "[t]he mere fact that the accomplice's testimony was corroborated by the testimony of [other witnesses] is no reason for refusing to give such written request"); Maddox v. State, 136 Ga. App. 370 (4) (221 SE2d 231) (1975) (though the circumstantial corroborative evidence was sufficient to sustain the conviction, the trial court's failure to instruct the jury on accomplice corroboration was error). See also Johnson, 288 Ga. at 806 (noting that accomplice corroboration instruction was appropriately given even where evidence was sufficient to corroborate accomplice's testimony).

The fact that the failure to give the instruction where warranted is error

_____

[7] See Fleming v. State, supra, and cases cited in footnote 5.

12

does not, of course, necessarily demand reversal. "A conviction in a criminal case will not be reversed when it is highly probable that an erroneous jury instruction did not contribute to the verdict." Francis v. State, 266 Ga. 69, 72 (3) (463 SE2d 859) (1995).[8] Under the circumstances presented here, we find that the error was in fact harmless. In addition to O'Kelly's testimony, the State adduced, through Daniel,[9] Hamm's own admission that he had "killed an amigo" and Hamm's statement that "his girl had set up a lick." The State also presented independent evidence that on the night of the shooting Hamm fled his apartment, having implored his brother-in-law to retrieve him "as soon as possible," and ultimately relocated with O'Kelly to West Point. Further, the State adduced evidence that, on the day and in the vicinity of the shooting, Hamm was in possession of an AK-47, a model which is capable of ejecting the particular type of shell casing recovered from the scene, and that Hamm had

---

[8] We note that in cases where no request for this charge is made at trial or the defendant otherwise fails to properly preserve this ground for appeal, reversal would be warranted only if the more stringent "plain error" standard is satisfied. See, e.g., Jackson v. State, 294 Ga. 34 (2) (751 SE2d 63) (2013).

[9] While Hamm maintains that Daniel also could be found to have been an accomplice, we note that even assuming arguendo this contention has merit, it is well established that the testimony of one accomplice may be used to corroborate that of another. See Ramirez v. State, 294 Ga. 440, 442 (___ SE2d ___) (2014).

asked Daniel to take his AK-47 after telling Daniel that he had shot someone.

Moreover, though O'Kelly was clearly the State's star witness, for the jury to believe she was an accomplice it would necessarily have had to credit Daniel's testimony, as he was the only witness to testify to her complicity in an attempted armed robbery. Daniel was also the only witness to affirmatively corroborate Hamm's participation in the Ruiz-Mendieta shooting, by recounting Hamm's incriminating statement that he had "shot . . . the amigo." Thus, the same witness whose testimony would have provided the basis for a finding that O'Kelly was an accomplice also provided the corroboration necessary to support her testimony as an accomplice. We therefore find it highly probable that the jury either (1) believed all of Daniel's testimony, in which case, had it been instructed on the need for accomplice corroboration, it would have found Hamm's incriminating statement to be sufficient corroboration; or (2) rejected all of Daniel's testimony, in which case O'Kelly would not have been adjudged an accomplice and thus no corroboration of her testimony was necessary. A verdict of guilt would result under either scenario. Accordingly, we find it highly likely that the trial court's failure to give the requested instruction did not contribute to the verdict, and reversal is not required.

14

3. Hamm separately enumerates as error the trial court's refusal to give his requested instruction regarding parties to a crime. Insofar as Hamm contends that this instruction was necessary because the pattern jury charge on corroboration of accomplice testimony does not include a definition of "accomplice," this enumeration fails in light of our conclusion in Division 2 that the failure to instruct on accomplice corroboration was not reversible error.

Judgment affirmed. All the Justices concur.

Decided March 17, 2014.

Murder. Clayton Superior Court. Before Judge Collier.

Leslie R. Lowry, for appellant.

Tracy Graham-Lawson, District Attorney, Frances C. Kuo, Michael D. Thurston, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine T. Parvis, Assistant Attorney General, for appellee.