304 Ga. 624
FINAL COPY

S18A1494.   FOSTER v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Jerome Foster was found guilty of malice murder,

two counts of felony murder, and related crimes in connection with the robbery,

beating, and strangling death of Kenneth Scott, Jr.[1] In his sole enumeration on

---

[1] On November 20, 2012, Foster was indicted for malice murder, two counts of felony murder (predicated on aggravated assault with intent to rob and robbery by force), robbery by force, and aggravated assault with intent to rob. Following a November 10, 2014 Faretta hearing during which Foster requested to proceed pro se, Foster was allowed to represent himself at trial on the charges. See Faretta v. California, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975). Following an April 4-8, 2016 jury trial, Foster was found guilty on all counts. Foster was sentenced to life without parole for malice murder and twenty concurrent years for robbery by force. Although the trial court initially sentenced Foster on aggravated assault with intent to rob as well, the trial court later amended Foster's sentence to reflect that the aggravated assault count merged into the robbery by force count for sentencing purposes. The two felony murder counts were vacated by operation of law. See Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). Foster filed a pro se motion for a new trial on April 27, 2016, which he amended, with newly appointed counsel, on March 1, 2018. Following an April 11, 2018 hearing, the trial court denied the motion on April 17, 2018. Foster filed a timely notice of appeal on May 1, 2018, and, following the payment of costs, his appeal was docketed to the August 2018 term of this Court and submitted for decision on the briefs.

appeal, Foster contends that, because the statements of an accomplice linking him to the crimes were not sufficiently corroborated, the evidence was insufficient to sustain his convictions. We affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, from the evening of Thursday, August 16, 2012 into the early morning of Friday, August 17, Scott worked the night shift at U.S. Foods in Fairburn, Georgia. Scott was known by his friends as "Stuntman," because he liked to carry and flaunt large amounts of cash, sometimes cashing his entire Thursday paycheck. Scott picked up and cashed his weekly paycheck early on the afternoon of August 16.

After clocking out of work at 2:57 a.m. on August 17, Scott waited in his pickup truck in the U.S. Foods parking lot for Foster, whose employer, Sensational Cleaning Service, contracted out its workers to provide janitorial services to U.S. Foods. Foster left his shift around the same time as Scott to meet with him under the pretense of selling him gift cards. However, Foster and another man, Andrew Ball, planned to rob Scott instead. With Ball hiding in the back of Foster's car, Foster drove from the U.S. Foods parking lot to an isolated location, and Scott followed Foster in his pickup truck. While Foster spoke with

2

Scott upon reaching their destination, Ball jumped out of his hiding spot in Foster's car and began fighting Scott. Foster then beat Scott with a baseball bat, Foster and Ball robbed him, and they strangled him to death with a canvas belt.

Before returning to work, Foster entered through a bedroom window of the home that he shared with his wife, Pamela Thomas, at around 4:00 a.m.; he stated that he had spilled chemicals on his work clothes and needed to change. Later that morning between 7:00 a.m. and 7:30 a.m., Foster's co-workers Wanda Odom and her husband, Jeff, spotted Foster on foot coming up a small road behind a McDonald's at a fast pace. The couple offered Foster a ride to work, and he eventually accepted. Wanda inquired as to why Foster was on foot, to which he replied his car had broken down on the highway. Jeff, a mechanic, offered to look at the vehicle, but Foster declined. Wanda testified that Foster smelled of soap as if he had just showered and that he was not wearing his regular work uniform.

Later that day, Foster and Ball, who now had Scott's truck, went to the home of Robby Bell. They asked Bell to help them burn the truck, but he ultimately declined. Then, after stopping briefly at Foster's house with the truck, Foster and Ball left with the truck. On August 18, the truck was found burned

almost to a husk on a property in Jonesboro, Georgia. Foster later admitted to the police that he was with Scott and Ball on the night of the murder and that he had participated with Ball in setting Scott's truck on fire.

Later on August 18, Ball came to Foster and Thomas' home and described to Thomas and her family what had transpired between him, Foster, and Scott. Ball told them about the plan to meet with Scott under the pretense of selling him gift cards, the attack on Scott, Foster joining the fight and hitting Scott with a baseball bat, and the men taking Scott's money.

On August 24, 2012, Scott's decomposing body was found about a mile away from U.S. Foods near a dirt road in Fulton County. Scott's pants had been pulled down below his knees, and his pockets were turned inside out as if someone had gone through them and pulled something out. A canvas belt was around his neck, which the State's medical examiner noted was an indication of possible strangulation.[2] A bloody washcloth was found at Foster's home, and

---

[2] The State's medical examiner could not rule out blunt force trauma as being involved in the attack because Scott's skin was too discolored from decomposition for the medical examiner to definitively determine the extent of any bruising, lacerations, or soft tissue injuries to Scott's body.

freshly laundered pants with blood-like stains were found in Foster's car.[3] Cell phone records showed that Scott's last calls were to Foster.

Before Scott's body was found, Foster quit his job at Sensational Cleaning, telling a co-worker that he was afraid that the police suspected that he had something to do with Scott's disappearance.

2. Foster argues that the evidence was insufficient to support the verdict because Ball's statements were not sufficiently corroborated. We disagree.

Pursuant to OCGA § 24-14-8, "[in] felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient [to establish a fact]. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness." At trial, Ball, the accomplice, did not testify. However, his story was conveyed to the jury by the witnesses to whom Ball had divulged it. Although this sort of hearsay testimony would normally be inadmissible unless it fell within some sort of exception, Foster, who represented himself at trial following an appropriate hearing

---

[3] GBI forensic testing confirmed the presence of blood on the washcloth, but was unable to confirm that the stains on the recently washed pants indicated the presence of blood. However, the State's forensic serologist testified that the negative test result on the pants could have occurred based on the fact that they had been recently washed. In this regard, Foster stated his pants were bloody because he had been outside with his dog and the dog had scratched his legs.

pursuant to Faretta v. California, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975), did not object to Ball's statements being admitted at trial. See OCGA § 24-8-802 ("[I]f a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible.").[4]

Pretermitting the question whether the hearsay statements involved here even needed to be corroborated at trial to establish certain facts,[5] we now consider whether the other evidence in this case provided sufficient corroboration of Ball's statements to support Foster's convictions.

> [S]ufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a

---

[4] Appellate counsel does not challenge on appeal the admission at trial of Ball's statements.

[5] OCGA § 24-14-8 refers to "felony cases where the only witness is an accomplice," and the "testimony" of that single witness being insufficient to establish a fact. Here, it is undisputed that Ball did not actually "testify" as a sworn "witness" at trial. However, we do not address today whether the hearsay statements of witnesses at trial who are testifying about the matters allegedly told to them by an accomplice must be corroborated in the same manner as the actual testimony of an accomplice pursuant to OCGA § 24-14-8. See, e.g., Lawrence v. State, 342 Ga. App. 396 (2) (802 SE2d 859) (2017) (in light of unsettled nature of law on the particular issue, no plain error where trial court failed to charge on accomplice corroboration under circumstances where accomplice's "statement [was] introduced by another witness and [the accomplice did] not testify at trial") (footnote omitted).

6

conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

(Citations and punctuation omitted.) Threatt v. State, 293 Ga. 549, 551 (1) (748 SE2d 400) (2013).[6]

Here, independent evidence revealed that (1) Scott was known to carry large amounts of money after getting paid and had just cashed his check prior to meeting with Foster; (2) Foster and Scott left U.S. Foods at around the same time on the night Scott went missing; (3) Scott's last calls were to Foster; (4) Scott's body was found with his pants pockets inside out, as if someone had rifled through them; (5) Foster entered his home through a window on the night of the murder, claiming that he needed to change clothes after having spilled something on them; (6) Foster had bloody pants; (7) a bloody washcloth was

---

[6] Although the instant case is governed by Georgia's new Evidence Code and Threatt was decided under our old Evidence Code, the case may still be applied here because the statutory provision on corroboration under the old Evidence Code was carried over into the new Evidence Code and has no federal corollary. Compare former OCGA § 24-4-8 with OCGA § 24-14-8. See also State v. Almanza, 304 Ga. 553, 555 (2) (820 SE2d 1) (2018); Atkins v. State, 304 Ga. 240, 244 (2) n.1 (818 SE2d 567) (2018); State v. Frost, 297 Ga. 296 (773 SE2d 700) (2015).

found at Foster's home after the murder; (8) Foster admitted to being with Scott and Ball the night of the murder; (9) Foster drove and participated in the burning of Scott's truck after the night of Scott's murder; and (10) Foster suddenly left his job shortly after Scott was reported missing, citing his own fears that he might have been implicated in Scott's disappearance. "[E]vidence of the defendant's conduct before and after the crime may give rise to an inference that he participated in the crime." Parkerson v. State, 265 Ga. 438, 439 (2) (457 SE2d 667) (1995). Despite Ball being the only witness to Foster's attack on Scott, there was ample independent corroborating evidence from before and after the attack to implicate Foster in the killing and robbing of Scott.

Additionally, the evidence was sufficient as a matter of constitutional due process to enable the jury to find Foster guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Judgment affirmed. All the Justices concur.

8

Decided October 22, 2018.

Murder. Fulton Superior Court. Before Judge Downs.

Michael W. Tarleton, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General, for appellee.