304 Ga. 760
FINAL COPY

S18A1241. WALTER v. THE STATE.

PETERSON, Justice.

Jeneral Walter appeals his convictions for felony murder and possession of a firearm during the commission of a felony. Both convictions stem from the shooting death of T'Shanerka Smith on February 14, 2010.[1] Walter argues that

---

[1] A Fulton County grand jury indicted Walter along with co-defendants Darron Cato, Andrew Neloms, and Omari Smith on May 7, 2010, charging them with malice murder, felony murder, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. The four co-defendants were tried together in November 2010, although the trial court declared a mistrial as to Cato when his counsel began experiencing medical problems mid-trial. The trial of Walter, Neloms, and Omari Smith continued, and the jury found Walter and Omari Smith not guilty of malice murder but guilty of felony murder and the other charges, while acquitting Neloms of all charges. Cato's case was tried separately to verdict in August 2011; we recently affirmed his convictions. See Cato v. State, 304 Ga. 496 (820 SE2d 41) (2018). The trial court sentenced Walter to life in prison on the felony murder count and a consecutive five-year sentence on the firearm count, and merged the aggravated assault count. Walter filed a motion for new trial on December 6, 2010, and amended it on January 28, 2014. The trial court denied the motion on June 9, 2015. Walter filed a timely notice of appeal, and the case was docketed to this Court's August 2018 term and submitted for decision on the briefs. "[W]e do not condone . . . inordinate delay[s] in . . . motion for new trial proceeding[s]," as such "delays put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial." Owens v. State, 303 Ga. 254, 258 (4) (811 SE2d 420) (2018) (citation and punctuation omitted).

the trial court erred in denying his motion to sever his trial from that of his co-defendants. He also argues that the trial court committed plain error by instructing the jury that it could consider a witness's "level of certainty" in assessing the reliability of the witness's identification and by failing to instruct the jury that accomplice testimony must be corroborated. The trial court did not abuse its discretion in denying the motion to sever, however, as Walter has not shown a clear prejudice and denial of due process resulting from the joint trial. Walter also has not shown plain error in the jury instructions, since any error in the level of certainty instruction did not likely affect the outcome, and no accomplice-corroboration instruction was required on this record. We therefore affirm.

The victim's death can be traced to a dispute between her brother (Eddie Edwards) and a group that included Walter, Darron Cato, Omari Smith, Andrew Neloms, and Derek McCarter. Edwards lived at the Fulton County apartment complex where he performed maintenance, while McCarter was squatting in another unit at the complex. The night before the shooting, McCarter, Walter, and others gathered to party in that apartment.

The next day, Edwards arrived at the unit and began removing the locks

from the doors, telling McCarter and Cato that they needed to leave. Walter became involved in the discussion; he had a firearm and picked up another that had been on a couch. After Edwards returned to his own apartment, a group of four men drove up in a car, and Walter began shooting through one of the backseat windows at a group of Edwards's cousins gathered outside Edwards's apartment. No one was injured by the shooting. After the shooting, Edwards and a cousin found McCarter and beat him up.

Walter and his friends left the apartment complex but returned later that day to retaliate. Walter's girlfriend, Angelica Mitchell, drove Walter, Cato, Neloms, and Omari Smith to the apartment complex. Mitchell dropped off her four passengers outside the complex. Mitchell testified that she saw that at least Walter and Cato had guns when they got out of the car, but she did not know what the men were planning and proceeded directly to work after she dropped them off. Once outside the car, Walter, Cato, and Omari Smith shot in the direction of Edwards's apartment, where the victim had been standing on the porch. The victim was shot and was pronounced dead after being taken to a hospital.

Several eyewitnesses to the fatal shooting testified at trial. Priscilla Cofer

3

testified that she was standing on Edwards's porch with the victim when she saw Mitchell drive Walter, Cato, Neloms, and Omari Smith through the neighborhood. A few minutes later, she saw Walter, Cato, and Omari Smith shooting toward the apartment. Edwards's next-door neighbor, Sharyetta Thomas, and the victim's boyfriend, Derrick Thompson, both testified that they saw a shooter who was a light-skinned African-American man with dreadlocks, a description that matched Walter's appearance; Thomas also picked Walter out of a photo array "because he looked like the guy that was shooting."

One of Edwards's neighbors, Tamika Campbell, testified that after hearing the gunshots, she saw three men running through a field, as well as a fourth man putting a gun in his pants; she picked Walter out of a photo array as the man with the gun. Two witnesses testified that Walter asked them to lie to police by saying that he was with them at the time of the shooting.

1. Although Walter does not challenge the sufficiency of the evidence, we have independently reviewed the record and conclude that the trial evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

4

2. Walter argues that the trial court erred in denying his motion to sever his trial from that of his co-defendants. We disagree.

When two or more defendants are jointly indicted for non-capital offenses or a capital offense where the State does not seek the death penalty, "such defendants may be tried jointly or separately in the discretion of the trial court." OCGA § 17-8-4 (a). The trial court's discretion to grant or deny a motion for severance in such circumstances is broad. Herbert v. State, 288 Ga. 843, 845 (2) (708 SE2d 260) (2011). "In ruling on a severance motion, the court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses." Id. A defendant who requests severance bears the burden to "make a clear showing that a joint trial would lead to prejudice and a consequent denial of due process." Marquez v. State, 298 Ga. 448, 449 (2) (782 SE2d 648) (2016) (citation and punctuation omitted). A showing that a separate trial merely would give that defendant a better chance of acquittal is insufficient. Id.

Walter has not shown that severance was required. Walter points to statements by counsel for his co-defendants in pre-trial proceedings and closing

5

arguments implicating Walter while contending their clients were not present for or did not participate in the shooting. Acknowledging that a co-defendant's use of antagonistic defenses does not itself require severance, see Kennedy v. State, 253 Ga. 132, 135 (2) (317 SE2d 822) (1984), Walter argues on appeal that the trial court erred because these defenses were "not merely antagonistic" but were "mutually exclusive" of an acquittal of Walter. But that is a distinction without a difference under our case law; we have characterized as "antagonistic" a defendant's position that a crime was committed not by him but by a co-defendant. See, e.g., Metz v. State, 284 Ga. 614, 616 (2) (a) (669 SE2d 121) (2008) (appellant argued that co-defendants stabbed victim, while they accused appellant), overruled on other grounds by State v. Kelly, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011); Loren v. State, 268 Ga. 792, 795 (2) (493 SE2d 175) (1997) (co-defendants "each presented vigorous defenses attempting to show that the other caused the fatal injuries").

In order to obtain a new trial based on the trial court's denial of severance, Walter must show a "clear prejudice and denial of due process" as a result of his co-defendants' antagonistic defenses that might have been avoided by separate trials. Kennedy, 253 Ga. at 134-135 (2); see also Palmer v. State, 303 Ga. 810,

6

815 (III) (814 SE2d 718) (2018) ("In case after case where co-defendants acted in concert, we have found that severance was not required simply because the defendant argued about identity or the co-defendant blamed — or even put forth evidence against — the defendant."). Walter cannot make the showing necessary to prevail. None of the defendants testified, and Walter points to no particular testimony elicited by defense counsel or otherwise presented by his co-defendants in support of his argument that severance was required. Compare Barge v. State, 294 Ga. 567, 571 (3) (b) (755 SE2d 166) (2014) (considering necessity of severance where co-defendant introduced a videotape at odds with appellant's testimony, and finding trial court did not abuse its discretion in denying severance where the videotape was redundant of previously admitted evidence). Moreover, there was substantial evidence of Walter's guilt that would have come in regardless of severance. The jury heard evidence that multiple eyewitnesses identified Walter as one of the men who shot at the victim or gave a description of the shooter matching Walter's appearance. It also heard evidence that Walter tried to persuade others to offer false alibi evidence to police, which provided additional evidence of Walter's guilt. See Kell v. State, 280 Ga. 669, 671 (2) (a) (631 SE2d 679) (2006) (a defendant's attempt to

7

influence a witness can serve as circumstantial evidence of guilt). The trial court did not abuse its discretion in denying severance. See Loren, 268 Ga. at 795 (2) (no harm in co-defendant's antagonistic defense where co-defendant's evidence against appellant was cumulative of State's evidence against appellant, which was "substantial").

3. Walter also argues that the trial court committed plain error by instructing the jury that it could consider a witness's "level of certainty" in assessing the reliability of the witness's identification and by failing to instruct the jury that accomplice testimony must be corroborated. Walter has not demonstrated plain error in either of these aspects of the court's instructions.

Because Walter did not raise these objections to the court's charge at trial,[2] we review these challenges to the jury charge only for plain error. See Simpson v. State, 298 Ga. 314, 316 (3) (781 SE2d 762) (2016). Under plain error review,

---

[2] Walter's counsel did not submit any requested instructions but told the trial court he was adopting those submitted by Cato and Neloms. Neloms's counsel requested the accomplice-corroboration charge but, in arguing against a charge on conspiracy requested by the State, later contended that the accomplice charge was not appropriate because no accomplice ever testified. Walter's counsel objected to the charge that the testimony of a single witness generally is sufficient to establish a fact, but Walter does not contend on appeal that the objection to that charge amounted to an objection to the failure to give an accomplice-corroboration charge.

"we will reverse the trial court only if the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." Saffold v. State, 298 Ga. 643, 650 (7) (784 SE2d 365) (2016) (citation and punctuation omitted).

(a) Walter argues that the trial court plainly erred when it instructed the jury that it could consider "the level of certainty shown by the witness about his or her identification" in assessing the reliability of a witness's identification. Well before Walter's trial, we disapproved the pattern instruction containing that language. See Brodes v. State, 279 Ga. 435, 442 (614 SE2d 766) (2005). But errors in jury instructions under Brodes may be harmless in the light of the evidence presented and the jury instruction as a whole. See Leeks v. State, 303 Ga. 104, 108-109 (3) (810 SE2d 536) (2018) (Brodes error harmless where significant evidence corroborated identifications and the trial court instructed the jury that the State had to prove the identity of the perpetrator beyond a reasonable doubt). In particular, errors in giving this instruction are harmless where the identification witness was acquainted with the defendant prior to the shooting. See Jones v. State, 282 Ga. 306, 307 (4) (647 SE2d 576) (2007);

9

Conway v. State, 281 Ga. 685, 689 (2) (642 SE2d 673) (2007).

Here, Walter complains that both Cofer and Thomas "expressed some degree of certainty or positivity in their identification" of Walter. But Cofer testified that she had known Walter for about two years and saw him "every day or every other day" during a one-year period in which she worked at a fast food restaurant that he frequented, so the instructional error was harmless as to her testimony. See Jones, 282 Ga. at 307 (4). And Thomas did not identify Walter in court as one of the perpetrators but merely gave a physical description (stating that her in-court description of the perpetrator's skin color matched that of Walter) and acknowledged having picked a particular person out of a photo array. Thomas did not testify that she was acquainted with Walter, but she also did not express any particular certainty about her identification of him, other than explaining that she was able to give a description of one of the shooters, but not the others, because "he was in the front," and confirming that she "positively identif[ied] or . . . made an identification" in the photo array. Moreover, in addition to being corroborated by Cofer's testimony, Thomas's identification testimony was corroborated by the testimony of someone who knew Walter well — his girlfriend, who testified to dropping him off with a gun at the crime

10

scene. Evidence that Walter tried to influence witnesses to create a false alibi provided additional corroborating evidence of his guilt. Moreover, the trial court instructed the jury that it might consider the possibility of mistaken identity and that the State bore the burden to "prove beyond a reasonable doubt the identity of each defendant as the person who committed the crimes alleged" in the indictment. We thus conclude that any error in giving the level of certainty instruction did not likely affect the outcome and therefore was not plain error.

(b) Finally, pointing to evidence he says indicated Mitchell was an accomplice, Walter argues that the trial court committed plain error when it failed to instruct the jury that accomplice testimony must be corroborated. We disagree.

Under the old Evidence Code, applicable in this case, as well as the new Code, in felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient to establish a fact; rather, corroborating circumstances or other witness testimony is needed. See former OCGA § 24-4-8; see also OCGA § 24-14-8.[3] It is error to fail to give a jury instruction on

_____

[3] Our new OCGA § 24-14-8 does not have an analog in the Federal Rules of Evidence, so case law under the old, substantially identical rule continues to apply even in cases governed by the new rule. See Foster v. State, 304 Ga. 624, 627 (2) n.6 (820 SE2d 723)

11

accomplice liability where there is slight evidence supporting a finding that a witness was an accomplice. See Hamm v. State, 294 Ga. 791, 796 (2) (756 SE2d 507) (2014). That is true even when there is sufficient evidence to corroborate the accomplice's testimony, because jurors, as the exclusive judges of credibility, are entitled to reject the corroborating evidence. See id. In considering whether a witness is an accomplice, we look to the definition of party to a crime found in OCGA § 16-2-20. See Stripling v. State, 304 Ga. 131, 136 (2) (816 SE2d 663) (2018). Under that statute, "[a] person is concerned in the commission of a crime . . . if [she] . . . [i]ntentionally aids or abets in the commission of the crime; or [i]ntentionally advises [or] encourages . . . another to commit the crime." OCGA § 16-2-20 (b) (3), (4). "[M]ere presence or approval of a criminal act is not sufficient to render one a party to the crime, and a conviction as a party to a crime requires proof that the defendant shared a common criminal intent with the principal perpetrator of the crime." Jones v. State, 292 Ga. 656, 658 (1) (a) (740 SE2d 590) (2013). "But criminal intent . . . may be inferred from that person's conduct before, during, and after the

_____

(2018).

12

commission of the crime." Id.

Walter argues that Mitchell's act of driving Walter and his co-defendants to the scene and failure to call police immediately upon seeing a gun meant that the trial court was required to instruct the jury that accomplice testimony must be corroborated, given that the court did charge the jury that "the testimony of a single witness, if believed, is generally sufficient to establish a fact." But Mitchell testified that she did not know a shooting was going to occur, and Walter points to no evidence that Mitchell knew what he and the other men were planning or otherwise shared their criminal intent. Mitchell's knowledge that at least two of the men had guns is not knowledge that a shooting was about to occur. Moreover, shortly after learning of the shooting, Mitchell telephoned police and told them that she had dropped off the four men at the apartment complex. Walter suggests that our decision in Hamm requires an accomplice-corroboration instruction here. But that case involved strong evidence that a State's witness was an accomplice: there was evidence that she arranged a robbery, lured the victim to the scene of the shooting, fled the scene immediately after the shooting, left town in its aftermath, and failed to report the crime until investigators located her. See Hamm, 294 Ga. at 794 (2). Walter cites no

13

precedent requiring an accomplice-corroboration instruction under circumstances similar to those presented here. "[A]n error is plain if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point . . . ." Simmons v. State, 299 Ga. 370, 374 (2) (788 SE2d 494) (2016) (citation and punctuation omitted). On this record, we cannot conclude that the trial court committed obvious error in failing to instruct the jury on corroboration of accomplice testimony. See Stripling, 304 Ga. at 136 (2) (declining to find plain error in failure to give accomplice-corroboration charge where appellant cited no precedent requiring such an instruction under similar circumstances).

Judgment affirmed. All the Justices concur.

Decided December 10, 2018.

Murder. Fulton Superior Court. Before Judge Downs.

Michael W. Tarleton, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Stephany J. Luttrell, Arthur C. Walton, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.