311 Ga. 620
FINAL COPY


S21A0314.  RICE v. THE STATE.


MᴄMɪʟʟɪᴀɴ, Justice.

Appellant Malik Deshawn Rice appeals his convictions for felony murder and other related crimes in connection with the shooting death of Clarence Gardenhire.[1] Rice argues on appeal that

---

[1] Gardenhire was killed on August 19, 2013. On November 21, 2013, a DeKalb County grand jury indicted Rice and his co-defendant Contevious Stepp-McCommons for malice murder, felony murder predicated on aggravated assault, two counts of aggravated assault, possession of a firearm during the commission of a felony, and criminal attempt to commit armed robbery. At a joint trial from February 10 to 13, 2015, a jury acquitted Rice and Stepp-McCommons of malice murder but returned verdicts of guilty on all other charges. On February 23, 2015, the trial court sentenced Rice to serve life in prison without the possibility of parole for felony murder, five years for possession of a firearm during the commission of a felony, thirty years for criminal attempt to commit armed robbery, and twenty years for the aggravated assault of Jamal Perry, all to be served consecutively. The remaining count of aggravated assault against Gardenhire merged into the felony murder count for sentencing purposes. This Court affirmed Rice's co-defendant's convictions in *Stepp-McCommons v. State*, 309 Ga. 400 (845 SE2d 643) (2020).

Rice filed a motion for new trial on February 27, 2015, and the motion was amended on September 26, 2016, and January 31, 2020. After hearings on November 8, 2017, and January 11, 2018, the trial court denied the amended motion for new trial on August 4, 2020. Rice timely filed a notice of appeal. The case was docketed in this Court to the term beginning in December 2020 and

the trial court committed plain error in failing to charge the jury on accomplice corroboration and that his conviction for aggravated assault should have merged into his conviction for criminal attempt to commit armed robbery. Discerning no plain error, we affirm Rice's convictions, but we vacate his conviction and sentence for aggravated assault because we agree that it should have merged with his conviction for criminal attempt to commit armed robbery under the facts of this case.

With regard to Rice, the evidence at trial showed the following.[2] Rice placed an ad on Craigslist to sell a cell phone and told his girlfriend, Ashante Barker, that he planned to meet the person who responded to his ad at an abandoned house and rob the would-be purchaser with the help of another person. While one person would pretend to sell the cell phone, the other would hide in the woods, emerging later to commit the robbery. Barker testified that on the day of the shooting, Rice texted her to complain that the people with

was orally argued on February 3, 2021.
    [2] Additional facts underlying this case are set out in *Stepp-McCommons*, 309 Ga. at 400-02 (1).

2

whom he was communicating all wanted to meet in a public place, but that he was still trying to "set [people] up off Craigslist" and was waiting for someone to send him the address of the abandoned house.

On the night of the shooting, Rice went to a party near the arranged meeting location, and one of the guests, Dexter Martin, testified that Rice asked him if he wanted "to do a jugg." Martin declined. Rice's co-defendant, Contevious Stepp-McCommons, who was also at the party, testified that Rice asked him to help with a meeting that night. Stepp-McCommons agreed to go with Rice in exchange for $1,000. Stepp-McCommons testified that his cousin gave Rice a gun to carry with him to the meeting, and Rice gave the gun to Stepp-McCommons. Martin later observed Stepp-McCommons and Rice leave the party.[3]

Stepp-McCommons testified that Rice also used the term "jugg" when he described the proposed meeting, and both Stepp-

---

[3] Martin did not specify whether the two left the party together or separately.

McCommons and Martin said that they understood the term to mean a transaction to sell cell phones, not a robbery. However, Barker told the jury that when she used the term "jugg" in a text to Rice that day, she meant a robbery. And a detective with the DeKalb County Police Department testified based on his eight years of police experience in DeKalb County that "[a] jugg . . . 99.9% of the time means a robbery."

Jamar Perry testified that he responded to a Craigslist ad from someone selling a cell phone, and arranged to meet at a location chosen by the seller to make the sale, which turned out to be a "very dark," abandoned house. Gardenhire accompanied Perry to the meeting. Stepp-McCommons testified that when he and Rice got to the house, Rice hid behind a tree near the house while Stepp-McCommons spoke with Perry and Gardenhire. Perry testified that he saw and communicated with only one man. Although Perry did not identify this man at trial, his description of the clothes the man was wearing matched those Martin said Stepp-McCommons was wearing that night. Perry said that during their exchange, the man

4

pulled out a gun and told Perry and Gardenhire to "give it up, then." Stepp-McCommons stated at trial that he pulled out a gun at the meeting and shot Gardenhire multiple times after Gardenhire made a sudden movement. Gardenhire died of the resulting gunshot wounds.

The two co-defendants then fled through the surrounding neighborhood, and the homeowner of a house near the crime scene found a black cell phone in her back yard a short time later. Law enforcement officers subsequently determined that the phone number of that device belonged to Rice. Martin testified that he saw Stepp-McCommons and Rice return to the house where the party was being held about 15 to 30 minutes after they left. He said that Rice looked "terrified" and told him that "the deal went wrong; [Stepp-McCommons] killed the old man."

Barker was later arrested for making false statements in connection with the investigation into Gardenhire's death, and on the day after her arrest, someone identifying himself as Rice called the lead detective in the case to ask whether Barker could be granted

immunity if Rice turned himself in to the police. After being informed that the detective lacked authority to make such a deal, the caller stated, "you won't be able to find me[;] I'll be like . . . a fly in the wind." However, the identity of this caller could not be verified. When Rice was arrested in North Carolina several weeks later, a law enforcement officer asked Rice if he was going to try to clear his name. Rice responded in the negative, stating he would "do time for this because he was the one [who] planned it."[4]

1. Rice asserts that because Barker and Stepp-McCommons were accomplices and Barker's testimony was the only evidence supporting that he planned to commit robbery, the trial court plainly erred by failing to charge the jury that the testimony of an accomplice requires corroboration. See *Walter v. State*, 304 Ga. 760, 766 (3) (b) (822 SE2d 266) (2018) ("It is error to fail to give a jury

---

[4] Rice does not contest the sufficiency of the evidence to support his convictions, and we no longer conduct a sua sponte sufficiency review in non-death penalty cases such as this one, which was docketed to the term of this Court beginning in December 2020. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020).

6

instruction on accomplice liability where there is slight evidence supporting a finding that a witness was an accomplice."). Instead, the trial court instructed the jurors that the testimony of a single witness, if believed, was sufficient to establish a fact and that "[g]enerally, there is no legal requirement of corroboration of a witness provided you find the evidence to be sufficient."

As Rice notes, the State conceded at the hearing on the motion for new trial that the failure to give the accomplice charge was clear error, although the prosecutor asserted that no harm resulted from it. The trial court agreed that any error in omitting the accomplice charge likely did not affect the verdict and thus found no plain error. In addition, the trial court found sua sponte that Rice had implicitly, but not affirmatively, waived his claim of plain error, and Rice also challenges that finding on appeal.

Because Rice neither requested an accomplice charge nor objected on this ground to the single-witness charge as given, we can only review the omission of an accomplice charge for plain error. See *Anderson v. State*, 309 Ga. 618, 623 (3) (847 SE2d 572) (2020).

7

> To show plain error, the appellant must demonstrate that the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

(Citation and punctuation omitted.) *Hill v. State*, 310 Ga. 180, 194 (11) (a) (850 SE2d 110) (2020).

Pretermitting whether the trial court correctly determined that Rice properly waived this argument[5] and whether the evidence supported that Barker was an accomplice, we conclude that Rice cannot establish plain error arising from the trial court's failure to give the accomplice charge in this case. The trial court clearly erred in failing to give the charge in light of the fact that Rice's co-defendant, Stepp-McCommons, testified at trial. See *Doyle v. State*, 307 Ga. 609, 613 (2) (b) (837 SE2d 833) (2020); *State v. Johnson,* 305 Ga. 237, 240 (824 SE2d 317) (2019); *Stanbury v. State*, 299 Ga. 125, 131 (2) (786 SE2d 672) (2016). However, despite this clear and

---

[5] We note that neither the District Attorney nor the Attorney General defends the trial court's sua sponte waiver ruling.

obvious error, the record demonstrates that the error likely did not affect the outcome of Rice's trial, as required under the third prong of the plain-error test.

The evidence that Rice participated in the crimes was substantial completely apart from Stepp-McCommons's and Barker's testimony. This evidence included that Perry made plans to purchase a cell phone from someone on Craigslist, and the seller arranged a meeting at what turned out to be a dark, abandoned house. Shortly before the meeting that night, Rice asked Martin to accompany him and to do "a jugg," a term a police detective testified meant a robbery. Martin declined but later saw Rice and Stepp-McCommons leave the party. Rice's defense at trial was that he stayed across the street during the meeting,[6] and Perry testified that he saw and spoke only to someone matching Stepp-McCommons's description, raising an inference that Rice concealed himself from the victims. After Stepp-McCommons confronted Perry and

---

[6] Although closing arguments were not transcribed, Rice's trial counsel testified about their defense strategy at the motion for new trial hearing.

Gardenhire with a gun, which led to the shooting, Stepp-McCommons and Rice went back to the party, and Rice's cell phone was found shortly after the shooting in the back yard of a house near the crime scene. Martin saw Stepp-McCommons and Rice return to the party, not long after they left, and heard Rice say that the deal went wrong when Stepp-McCommons killed "the old man." Rice subsequently left the state. Also, the jury could infer that Rice was the person who called the lead detective to offer to surrender himself in exchange for immunity for Barker, and when Rice was later arrested, he admitted that he expected to serve time because he had planned the crime. On top of all that, even assuming that Barker was an accomplice, the testimony of one accomplice can corroborate that of another accomplice, see *Hurston v. State*, __ Ga. __, __ (3) (c) (854 SE2d 745) (2021), so the jury could have found the testimony mutually corroborating.

Because this evidence constitutes "substantial and consistent evidence" showing Rice's participation in the crimes, we conclude that the trial court's failure to give the accomplice charge likely did

not affect the outcome of his trial. See *Hawkins v. State*, 304 Ga. 299, 303 (3) (818 SE2d 513) (2018) (even where trial court gave the single-witness charge, the failure to give the accomplice charge did not likely affect the outcome of the defendant's trial where there was substantial and consistent evidence outside of the accomplice's testimony, including the defendant's admission that he shot someone and other evidence connecting the defendant to shooting); *Hamm v. State*, 294 Ga. 791, 797-98 (2) (756 SE2d 507) (2014) (trial court's refusal to give requested accomplice charge was harmless error where defendant admitted that he killed someone and other independent evidence connected him to the shooting). Cf. *Doyle*, 307 Ga. at 613-14 (2) (b) (trial court committed plain error in failing to give accomplice charge where accomplice was the only witness to identify defendant as a participant of the shooting, and there were no cell phone records or other testimony placing defendant in the vicinity of the crime); *Stanbury*, 299 Ga. at 131 (2) (failure to give accomplice charge likely affected the outcome of the trial where accomplice's testimony was the only evidence affirmatively

identifying defendant as the second man involved in the crime). Thus, Rice has failed to show plain error.

2. The indictment charged Rice, individually and as a party to a crime, with the offense of criminal attempt to commit armed robbery under OCGA § 16-4-1 against Perry and Gardenhire. It also charged the co-defendants, individually and as parties to a crime, with the offense of aggravated assault against Perry in violation of OCGA § 16-5-21. Rice contends that his conviction for aggravated assault should have merged into his conviction for attempted armed robbery, and the State conceded at the motion for new trial hearing that merger was appropriate.[7]

Because we agree that the convictions should have merged for sentencing, we vacate Rice's conviction and sentence for aggravated assault. See *Reeves v. State*, 309 Ga. 645, 649 (4) (847 SE2d 551) (2020); *Thomas v. State*, 298 Ga. 106, 112 (3) (779 SE2d 616) (2015).

---

[7] In denying the motion for new trial, the trial court ruled that the merger issue was moot because it had been corrected by a nunc pro tunc order issued on February 23, 2015. However, that ruling was error because the February 23, 2015 nunc pro tunc order did not merge the two offenses, maintained both convictions, and ran the sentences consecutively.

12

*Judgment affirmed in part and vacated in part. All the Justices concur.*

Decided April 5, 2021 —Reconsideration denied June 1, 2021.

Murder. DeKalb Superior Court. Before Judge Hydrick.

*Michael W. Tarleton*, for appellant.

*Sherry Boston, District Attorney, Deborah D. Wellborn, Elizabeth H. Brock, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.