314 Ga. 322
FINAL COPY

S22A0469.  PAYNE v. THE STATE.

PETERSON, Presiding Justice.

Lorenzo Payne appeals his conviction for malice murder stemming from the shooting death of Quartez Armour, which occurred after they cheated each other during a putative drug deal.[1] Payne argues that the trial court committed plain error when it

---

[1] The crimes took place on the night of April 12, 2005. On August 26, 2011, a Fulton County grand jury indicted Payne for malice murder, three counts of felony murder, aggravated assault, conspiracy, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Prior to trial, the trial court entered an order of nolle prosequi as to all counts except malice murder, felony murder predicated on aggravated assault, and felony murder predicated on possession of a firearm by a convicted felon. The case was tried before a jury in May 2013. The jury found Payne guilty of malice murder and felony murder predicated on aggravated assault and not guilty of felony murder predicated on possession of a firearm by a convicted felon. In a judgment filed on May 28, 2013, the trial court sentenced Payne to life without parole for malice murder and purported to merge the felony murder count; in fact, it was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). Payne filed a timely motion for new trial, which was amended by appellate counsel in March 2017, January 2019, August 2019, and March 2020. Following a hearing, the trial court denied the motion in an order entered on October 1, 2021. Payne filed a timely notice of appeal to this Court. The case was docketed to this Court's April 2022 term and orally argued on June 22, 2022.

failed to instruct the jury that accomplice testimony must be corroborated. He claims that the trial contained a structural error in that Armour's brother threatened witnesses and shared testimony with witnesses outside of the courtroom. And Payne argues that his trial counsel was ineffective in a variety of respects. We conclude that any error in failing to give the accomplice-corroboration instruction does not meet the test for plain error because it is not likely that any error affected the outcome of the trial. We also conclude that any claim of structural error based on the alleged actions of Armour's brother was not preserved, and that Payne has not met his burden of showing that counsel was constitutionally ineffective.

The evidence admitted at trial showed that in April 2005, Payne made plans to sell a kilogram of cocaine to Armour for $10,000 to $15,000. Unbeknownst to Armour, the "brick" of cocaine that Payne planned to sell him was a fake. Payne went with several associates to consummate the deal with Armour. Armour was provided the fake brick and gave Payne and his associates a sock of

cash in exchange. As they pulled away, Payne's group quickly realized that the sock contained only a few hundred dollars.

Even though the brick was a fake, Payne became angry and began scheming to retrieve it. When Armour refused to meet up again, Payne and his associates went to the home of Armour's mother and had Armour's car towed away. The group contacted Armour by telephone and attempted to exchange the car for money or the fake brick. When Armour refused, some of Payne's associates stripped the car. That night, Armour was shot and killed at a Fulton County apartment complex. He was found dead in the front seat of a car and had been shot multiple times, apparently at close range. Four .22-caliber bullets, all fired from the same gun, were recovered from Armour's body.[2] At the crime scene, investigators found seven .22-caliber casings (all fired from the same gun), one .22-caliber bullet, and two 9-millimeter casings (both fired from the same gun)

---

[2] Although a firearms examiner testified that he also received a 9-millimeter bullet from the medical examiner, this appears to be a reference to a bullet that had remained in Armour's body from a shooting prior to the events at issue here.

that were further away from Armour's body than the .22-caliber casings. Payne was arrested in Ohio in June 2005, giving a false name.

The State's case largely rested on the testimony and pretrial statements of Payne's associates Jermaine Strickland, Saccari Dodson, Antoine Weddington, Calvin Daniels, Renardo Thomas, and Marcus Bailey. Each was involved to some degree in the events that led up to the shooting — i.e., the putative drug deal and the theft and stripping of Armour's car. There was also some evidence that Weddington, Daniels, and Bailey may have been involved in the shooting of Armour. There was testimony that, after they realized they had been cheated by Armour, both Weddington and Bailey, along with Payne, said they were going to kill Armour. The jury also heard that Bailey told police that Weddington and Daniels were with Payne during the shooting, and that Dodson relayed to police that Daniels had said he was with Payne during the shooting.

But the jury also heard evidence showing that Payne was the one who actually shot Armour. Multiple witnesses testified that

4

Payne threatened to kill Armour after realizing that he had been shorted in the putative drug deal. Strickland testified that when he declined to drive Payne and others back to Armour's apartment, Payne responded by stating that Armour would be dead by the following day; Strickland said that Payne said, "Don't worry about it, I'm going to split the n****r's tater." Dodson testified that, after Payne realized that Armour had shorted him, Payne remarked, "When I catch him, I'm going to kill him," or, "When I catch him, I'm going to knock his head off." Dodson testified that, after Armour's car was stolen, Payne continued to say that he wanted to kill Armour, and threatened him directly over the telephone. Weddington testified that after Payne learned that Armour shorted him, Payne stated that he was going to "split [Armour's] wig." Daniels testified that, after they realized that they had been shorted, Payne said he was "going to kill" Armour.

Dodson further testified that, after hearing about Armour's death, he called Payne, who reported, "I got that n****r," which Dodson took to mean that Payne had killed Armour. The lead

5

detective on the case, JD Stephens, testified without objection that Dodson told him that Payne admitted to shooting Armour. The State also introduced and published to the jury an audio recording of Detective Stephens's interview of Dodson. On the recording, Dodson says that Daniels reported to him that Payne had shot Armour in the head and that Payne himself admitted to Dodson that he killed Armour. Dodson said he thought Payne had used a .45-caliber gun, but was uncertain.

Although Bailey insisted in his testimony that Payne never told him that he killed Armour, Detective Stephens read most of Bailey's written statement to the jury, including portions in which Bailey said that Payne had admitted to shooting Armour and that Bailey thought Payne had used a .22-caliber pistol to do so.

Daniels testified that he learned from Dodson that "they had just killed" Armour. Thomas testified that Daniels reported to him that Payne had been the one who had killed Armour.

The jury proceeded to find Payne guilty of malice murder and felony murder based on aggravated assault, but not guilty of felony

6

murder based on possession of a firearm by a convicted felon. This appeal by Payne followed.

1. Payne argues that the trial court committed plain error when it failed to instruct the jury that an accomplice's testimony must be corroborated. This claim fails at least on the third prong of the plain-error test, because any error did not likely affect the outcome of the proceeding.

The trial court instructed the jury under OCGA § 24-14-8 that generally the testimony of a single witness is sufficient to establish a fact and corroboration is not required. Payne did not request an accomplice-corroboration charge, and the trial court did not give one. After the trial court finished charging the jury, Payne's counsel stated that he had no objections. We thus review this claim only for plain error. See OCGA § 17-8-58 (b) ("Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if

7

it was not brought to the court's attention as provided in subsection (a) of this Code section.").

> To show plain error, the appellant must demonstrate that the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

*Clarke v. State*, 308 Ga. 630, 637 (5) (842 SE2d 863) (2020) (citation and punctuation omitted). This Court does not have to analyze all elements of the plain-error test where an appellant fails to establish one of them. See *State v. Herrera-Bustamante*, 304 Ga. 259, 264 (2) (b) (818 SE2d 552) (2018).

OCGA § 24-14-8 provides, in relevant part, that "[t]he testimony of a single witness is generally sufficient to establish a fact. However, in . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient."[3]

---

[3] Although Armour was killed in 2005, Payne was tried in May 2013, so the current Evidence Code applies. OCGA § 24-14-8 existed in identical form in the old Evidence Code and does not have an equivalent in the Federal Rules of Evidence, and we have held that precedent under the old code regarding it remains applicable under the current code. See *Foster v. State*, 304 Ga. 624, 627 (2) n.6 (820 SE2d 723) (2018).

Interpreting this rule, this Court has stated that a jury may not rely solely on an accomplice's testimony to find any fact necessary to sustain a defendant's felony conviction. "Instead, the existence of any such fact must also be supported either by the testimony of an additional witness or by other, independent evidence that corroborates the accomplice's testimony." *State v. Johnson*, 305 Ga. 237, 240 (824 SE2d 317) (2019) (citation and punctuation omitted). "In considering whether a witness is an accomplice, we look to the definition of party to a crime found in OCGA § 16-2-20[,]" such that there must be some evidence that the witness shared with the defendant "a common criminal intent to commit the crimes in question[.]" *Horton v. State*, 310 Ga. 310, 322-323 (3) (c) (849 SE2d 382) (2020) (citations and punctuation omitted).

Here, there is evidence that Bailey and Weddington threatened to kill Armour. There also is some evidence that Weddington and Daniels were with Payne when he shot Armour. But even assuming that this constitutes evidence that any of these three witnesses were accomplices to the murder, such that it was obvious error to not give

9

an accomplice-corroboration instruction — something we need not decide in order to resolve this case — we cannot say that any such error likely affected the outcome of the proceedings.[4] Where accomplice testimony is the "bedrock" of the conviction, it may be "likely that the jury convicted [the defendant] on [the accomplice's] testimony alone[.]" *Doyle v. State*, 307 Ga. 609, 613-614 (2) (b) (837 SE2d 833) (2020). But here, some of the most incriminating testimony came from witnesses who could not reasonably be considered accomplices in the murder. In particular, Dodson testified that Payne threatened to kill Armour when he realized that he had been shorted in the drug transaction, and Strickland similarly testified that Payne threatened to kill Armour and predicted Armour would be dead by the following day. Moreover,

---

[4] Because we resolve this issue on the grounds that any error did not likely affect the outcome, we need not consider the significance of the case having been tried before our decision in *Hamm v. State*, 294 Ga. 791 (756 SE2d 507) (2014), which overruled our prior precedent holding that it was not error for a trial court to refuse to give a requested instruction on accomplice corroboration so long as the State relied in part on evidence other than accomplice testimony in connecting the defendant to the crime. Id. at 796 (2).

Dodson testified that Payne admitted to killing Armour. Payne has pointed to no evidence from which it could reasonably be concluded that Dodson or Strickland was an accomplice to Armour's murder.[5]

Moreover, had the jury been given an accomplice-corroboration instruction, the testimony of any witness the jury concluded was an accomplice could have been corroborated by these non-accomplice witnesses or by the testimony of another accomplice. See *Rice v. State*, 311 Ga. 620, 624 (1) (857 SE2d 230) (2021) (citing possibility that testimony of a co-defendant and another potential accomplice could be found "mutually corroborating" in concluding that the trial court's clear error in not giving an accomplice-corroboration charge likely did not change the outcome of the trial). Given the number of witnesses who implicated Payne in the shooting, it is not likely that

---

[5] At oral argument, Payne acknowledged that merely being an accomplice in the underlying drug transaction would not be enough to trigger the statute's corroboration requirement in this case. Payne did suggest at oral argument that because the State's eyewitnesses had a motive to kill Armour by virtue of their involvement in the drug transaction, there was evidence that they were accomplices to the murder. But motive alone is not enough to make a person an accomplice. See *Moore v. State*, 255 Ga. 519, 521 (1) (340 SE2d 888) (1986) (insufficient evidence that appellant was a party to the crime of murder notwithstanding that he had motive).

the jury convicted him based on the uncorroborated testimony of a single witness who was an accomplice. Payne thus has not shown that it is likely that the failure to give the accomplice-corroboration charge affected the outcome of the proceedings. Compare *Hawkins v. State*, 304 Ga. 299, 303 (3) (818 SE2d 513) (2018) (not likely that the failure to give an accomplice-corroboration charge affected the outcome of the trial given the appellant's admission, eyewitness accounts from the victim's friends, and security camera footage showing the appellant at the scene of the crime), with *Johnson*, 305 Ga. at 241 ("[B]ecause virtually all of the incriminating evidence flowed from [the accomplice], the outcome of the trial court proceedings was 'likely affected' by the trial court's failure to provide an accomplice corroboration charge to the jury, and a proper instruction would likely have resulted in a different verdict."), and *Stanbury v. State*, 299 Ga. 125, 131 (2) (786 SE2d 672) (2016) (the trial court's failure to give an accomplice-corroboration charge likely affected the outcome of the trial where the accomplice "was the only witness who affirmatively identified [the defendant] as the second

12

man inside the house who robbed and shot" the victim).

2. Payne next argues that his trial contained a structural error in that Armour's brother threatened witnesses and shared testimony with them outside of the courtroom. We conclude that this claim was not preserved.

After several witnesses had testified for the State, outside of the presence of the jury, the trial court summoned to the bench the brother of the victim, Kelvin Armour ("Kelvin"), saying a deputy had reported that Kelvin had been "talking to witnesses outside." A "Ms. Hernandez" (who is not otherwise identified in the transcript but appears to have been affiliated with the prosecution) reported that she had spoken with a witness who was "agitated because Mr. Armour here has been walking back and forth talking about the witnesses lying and also telling them that 'I'm going to get you one by one, one by one.'" She added, "What I believe is going on is that he's listening to the testimony and then he's going out there and —." The trial court interrupted her to agree, saying, "That's what it sounds like to me." Kelvin denied talking to witnesses or making

13

threats, but the trial court found that "there's something going on" and Kelvin was "communicating with potential witnesses out there." The trial court ordered Kelvin to leave the courthouse and not communicate with any witnesses.[6] Payne did not object to this resolution of the matter.

A "structural error" generally is defined as a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (111 SCt 1246, 113 LE2d 302) (1991); see also *Berry v. State*, 282 Ga. 376, 378 (3) (651 SE2d 1) (2007). Structural errors are not subject to harmless error review; they are cause for "automatic" reversal. *Sinkfield v. State*, 311 Ga. 524, 527-528 (1) (858 SE2d 703) (2021); see also *Alexander v. State*, 313 Ga. 521, 526 (2) (870 SE2d 729) (2022). But we need not decide whether the trial court's handling of matters related to Armour's brother constituted a structural error. Payne preserved no such argument for our review,

---

[6] The parties do not dispute that, prior to that point, no order of the trial court had prohibited anyone from communicating with witnesses.

14

because he failed to request a mistrial or some other remedy. That leaves us nothing to review. See *Pyatt v. State*, 298 Ga. 742, 750 (5) (784 SE2d 759) (2016) ("[E]ven structural errors are capable of forfeiture."); *Reid v. State*, 286 Ga. 484, 488 (3) (c) (690 SE2d 177) (2010) ("The improper closing of a courtroom is a structural error requiring reversal only if the defendant properly objected at trial and raised the issue on direct appeal[.]").

3. Payne also brings a host of claims of ineffective assistance of counsel. We reject each of them.

For Payne to prevail on his ineffectiveness claim, he must show that (1) his trial counsel's performance was constitutionally deficient and (2) he was prejudiced by counsel's deficient performance. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). If Payne fails to establish one of these two prongs, "we need not examine the other." *Robinson v. State*, 308 Ga. 543, 553 (3) (842 SE2d 54) (2020). To show deficient performance, the defendant must demonstrate that counsel performed counsel's duties in an objectively unreasonable way, considering all of the circumstances

and in the light of prevailing professional norms. See *Strickland*, 466 U.S. at 687-688. To establish prejudice, Payne "must show that there is a reasonable probability that, but for counsel's unprofessional error[ ], the result of the proceeding would have been different." Id. at 694. "In reviewing a ruling on a claim of ineffective assistance of counsel, we defer to the trial court's findings of fact unless they are clearly erroneous, but we apply the law to the facts de novo." *State v. Spratlin*, 305 Ga. 585, 591 (2) (826 SE2d 36) (2019).

Payne argues that his trial counsel was ineffective for: (a) failing to request an accomplice-corroboration jury charge; (b) failing to object to two instances of inadmissible hearsay; (c) failing to object to a prosecutor's reading aloud from Bailey's prior statement during his testimony; (d) failing to request a mistrial based on Armour's brother threatening witnesses; (e) failing to object to Weddington's testimony that he had been threatened; (f) failing to cross-examine witnesses about whether Kelvin had threatened or shared testimony with them; and (g) failing to investigate, develop, and argue evidence

16

that another individual committed the murder.[7] Even assuming that counsel was deficient for failing to request an accomplice-corroboration instruction or to object to alleged hearsay, we conclude that Payne has not shown prejudice. And we reject Payne's argument that counsel's performance was deficient for the other reasons he cites.

(a) Addressing first Payne's argument that his trial counsel was ineffective for failing to request an accomplice-corroboration jury instruction, "[t]his Court has equated the prejudice step of the plain error standard with the prejudice prong for an ineffective assistance of counsel claim." *Jackson v. State*, 306 Ga. 69, 84 (4) (b)

---

[7] Payne also cites counsel's failure to object to leading questions by the prosecutor during Bailey's testimony. But he does not specify any particular leading question or explain how the answer prejudiced him; rather, he cites most of Bailey's direct testimony, up to the point at which defense counsel raised an overruled objection that the questioning was "turning into a cross-examination." "It is not the function of this Court to cull the record for a party to find alleged errors or to form arguments on the appellant's behalf." *Neuman v. State*, 311 Ga. 83, 96 (4) (b) (iv) (856 SE2d 289) (2021). "[C]laims that are so lacking in specific argument that they are incapable of being meaningfully addressed are deemed abandoned under Supreme Court Rule 22." *Willis v. State*, 304 Ga. 686, 694 (4) (820 SE2d 640) (2018) (citation and punctuation omitted). Through the lack of specificity in Payne's brief as to this enumeration of error, he has abandoned it. See *Lyons v. State*, 309 Ga. 15, 25 (8) n.7 (843 SE2d 825) (2020).

(829 SE2d 142) (2019) (citation and punctuation omitted). Thus, even if we assume that trial counsel performed deficiently in not requesting an accomplice-corroboration instruction, Payne has not shown prejudice for the reasons explained in Division 1. See id. at 84-85 (4) (b).

(b) Payne next argues that trial counsel was ineffective in failing to object on hearsay grounds to Detective Stephens's testimony about what Dodson told him and to Thomas's testimony about what Daniels told him. We conclude that any deficient performance in this regard did not prejudice Payne's defense.

We need not decide whether this testimony was inadmissible hearsay, or whether counsel performed deficiently in failing to object to it, because the testimony was cumulative of other evidence presented at trial and the admission of which Payne does not contest, and so its admission did not prejudice Payne. Detective Stephens's testimony that Dodson said Payne admitted to shooting Armour was cumulative of Dodson's own testimony to that effect and of the recording of Dodson's interview. And Thomas's testimony that

18

Daniels told him that Payne killed Armour was cumulative of other evidence as well, including that same recording of Dodson's interview, in which Dodson said that Daniels reported to him that Payne had shot Armour. Although the recording of Dodson's interview was not admitted until after the testimony in question, there is not a reasonable probability that any deficiency in counsel's failure to object affected the outcome of the case, given that the testimony was cumulative. See *Koonce v. State*, 305 Ga. 671, 675 (2) (c) (827 SE2d 633) (2019) (the defendant failed to show prejudice resulting from a failure to object or move for a mistrial based on certain testimony that was "largely cumulative of other, unobjected-to evidence of the same facts"); *Wilson v. State*, 297 Ga. 86, 87-88 (2) (772 SE2d 689) (2015) (no prejudice where the testimony challenged on hearsay grounds was cumulative).

(c) Payne argues that counsel was ineffective in failing to object to a prosecutor's reading aloud from Bailey's prior statement during his testimony, contending that the prosecutor should have asked certain foundational questions before attempting to impeach Bailey

with a prior inconsistent statement. But as the State points out, counsel did in fact object, saying it was "improper" for the prosecutor to read from the statement, particularly given that it had not been admitted into evidence. The trial court overruled the objection.[8] "Once the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve such claim of error for appeal." OCGA § 24-1-103 (a).

(d) Payne next argues that his counsel was ineffective for failing to move for a mistrial or otherwise object to Kelvin's threatening witnesses. We disagree.

Again, Payne claims that Kelvin's alleged threats to witnesses created a "structural error." He argues that this is akin to the unconstitutional closure of a courtroom, a structural error from which harm is presumed. See *Reid*, 286 Ga. at 488 (3) (c). He also attempts to draw an analogy to certain communications between a juror and a third party that may create a presumption of harm to

---

[8] Payne does not claim error in this ruling.

the defendant. See *Ledford v. State*, 264 Ga. 60, 65 (9) (439 SE2d 917) (1994). But he cites no authority that the sort of contact at issue here is grounds for a mistrial, and we have found none. A lawyer is not deficient for failing to make an argument that would require an extension of the law. See *Spratlin*, 305 Ga. at 593 (2) (a). Moreover, Payne does not explain why it would have made sense to grant a mistrial solely based on the fact that witnesses had been threatened, as although a retrial involves the selection of new jurors, it does not necessarily involve the selection of new witnesses. And to the extent that Payne argues that counsel otherwise was deficient for failing to "object to the constitutional structural error" of Kelvin threatening witnesses, he does not specify what remedy short of a mistrial counsel should have requested. Although a witness's reference to a threat may raise the possibility of prejudice to be addressed by the trial court when the reference is made *in front of the jury*, see, e.g., *Kemp v. State*, 303 Ga. 385, 397 (2) (d) (810 SE2d 515) (2018), the trial court's inquiry about Kelvin's alleged actions was conducted

outside of the presence of the jury.[9] Payne has not shown that counsel performed deficiently in failing to request a mistrial based on alleged threats by Kelvin or otherwise "object" to the situation.

(e) Payne argues that his counsel was ineffective for failing to object to testimony by Weddington that he had been threatened, and in failing to ask to strike the testimony or for a limiting instruction. Counsel was not deficient.

Weddington testified sometime after the trial court had inquired about possible threats to witnesses by Kelvin. During his testimony, Weddington was asked by the State whether anyone had "threatened [him] to be here today[.]" He replied in the affirmative, then clarified, "Oh, not a threat of me coming here. Have I been threatened since I've been sitting out there? Yes." The prosecutor elicited Weddington's further clarification that the DA's office had not "threatened" Weddington (or promised him anything) in order to procure his testimony, then moved on.

---

[9] Counsel's handling of a particular reference by a witness to a threat by an unspecified person is raised in a separate enumeration of error and addressed below.

Payne argues that counsel should have moved to strike this testimony and sought a limiting instruction, or at least explored the issue on cross-examination. It is unclear how this brief testimony by Weddington was relevant.[10] And counsel might have successfully sought a limiting instruction to the effect that the jury should not infer from Weddington's testimony that Payne had anything to do with any threat to him. See, e.g., *Gordy v. State*, 236 Ga. 723, 724 (3) (225 SE2d 287) (1976). But counsel testified that, although he did not recall why he did not object to this testimony, he was unsure of the identity of the person who had threatened Weddington and also is generally cautious about highlighting courtroom security issues for jurors, who may be concerned about that. In the light of such

---

[10] "Evidence of a defendant's attempt to influence or intimidate a witness can serve as circumstantial evidence of guilt[,]" as can an attempt by a third person to influence a witness, "where it is established that the attempt was made with the authorization of the accused." *Palmer v. State*, 303 Ga. 810, 816-817 (IV) (814 SE2d 718) (2018) (citation and punctuation omitted). But here the State made no attempt to connect any threat to Weddington to the defendant. A trial court also "has discretion to admit evidence of [a] threat [to the witness] if it is relevant to explain the witness's reluctant conduct on the witness stand." Id. at 817 (IV) (citation and punctuation omitted). But it does not appear that Weddington evinced reluctance to answer questions during his testimony or that explaining such reluctance was the purpose of introducing the remark about a threat.

concerns, counsel could have made a reasonable, tactical choice to not object. "The matter of when and how to raise objections is generally a matter of trial strategy." *Robinson v. State*, 278 Ga. 31, 36 (3) (c) (597 SE2d 386) (2004) (citation and punctuation omitted). We cannot conclude that it was deficient performance for counsel to refrain from addressing Weddington's testimony about a threat, particularly given the brief and vague nature of the remark.

(f) Relatedly, Payne argues that trial counsel was ineffective for failing to cross-examine witnesses about whether Kelvin had threatened or shared testimony with them. We disagree.

"[D]ecisions about what questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel." *Montanez v. State*, 311 Ga. 843, 854 (2) (860 SE2d 551) (2021) (citation and punctuation omitted). Counsel testified that asking State's witnesses about threats by the victim's brother may not have been helpful to the defense. And he indicated that he did not know how witnesses would have answered questions about sharing of testimony. Payne does not argue that

24

counsel's preparation for cross-examination of the witnesses was deficient, and we cannot say that counsel's failure to cross-examine witnesses on this point was objectively unreasonable given uncertainty about how they would have answered and whether those answers would have been helpful to his client.

(g) Finally, Payne argues that his trial counsel was ineffective in failing "to investigate, develop, and argue evidence" that another individual murdered Armour. We disagree.

A beer bottle was found at the crime scene. Although not presented at trial, a GBI report that appears to have been provided to the defense in discovery showed that the beer bottle contained DNA matching a person named Deshawn Zabin. Payne also attached as an exhibit to his amended motion for new trial records indicating that Zabin had been convicted of burglary, armed robbery, false imprisonment, and sexual battery based on actions committed at a law office in September 2006. Payne suggests that trial counsel should have investigated Zabin's possible involvement in Armour's murder and introduced evidence about Zabin's criminal

background, as well as evidence about the beer bottle indicating that Zabin had (at some point) been present at the scene of the shooting.

OCGA § 24-4-402 provides that "[a]ll relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules," and "[e]vidence which is not relevant shall not be admissible."

> This Court has followed the general rule that, before testimony can be introduced that another person committed the charged crime, the proffered evidence must raise a reasonable inference of the defendant's innocence and, in the absence of a showing that the other person recently committed a crime of the same or similar nature, must directly connect the other person with the corpus delicti.

*Roberts v. State*, 305 Ga. 257, 260 (3) (824 SE2d 326) (2019) (citation and punctuation omitted); see also *Holmes v. South Carolina*, 547 U.S. 319, 324 (126 SCt 1727, 164 LE2d 503) (2006) (discussing accused's federal constitutional right to present a full defense).

To the extent that Payne argues that counsel performed deficiently by not presenting evidence that Zabin's DNA had been found at the crime scene and that Zabin had been convicted of an

unrelated crime, he has not come close to meeting that standard. Evidence that Zabin may have been at the crime scene at some unknown point, and that he committed an unrelated, dissimilar crime, does not raise a reasonable inference of Payne's innocence. See *De La Cruz v. State*, 303 Ga. 24, 27-28 (3) (810 SE2d 84) (2018) (trial court did not err in excluding evidence that a third person assaulted a different victim sometime in the past and threatened that victim at the same location where the murder occurred, because that evidence did not directly connect the third person to the corpus delicti and did not raise a reasonable inference of the defendant's innocence, as there was no evidence that the third person was at that same location on the night of the murder). To the extent that Payne is arguing that counsel was deficient for failing to investigate and discover additional evidence connecting Zabin to Armour's death, he offers no evidence in support of this claim other than suggesting that additional investigation could have led to exculpatory evidence. "Unfounded speculation about what additional investigation might have uncovered or about what

27

unnamed witnesses may have testified [to] cannot support a claim that trial counsel was professionally deficient, nor can it establish prejudice." *Gittens v. State*, 307 Ga. 841, 844 (2) (a) (838 SE2d 888) (2020).

4. Payne also argues that his convictions should be reversed due to the cumulative prejudice arising from trial court error and ineffective assistance of counsel. See *State v. Lane,* 308 Ga. 10, 17 (1) (838 SE2d 808) (2020). Even considering together the trial court's presumed error in failing to give an accomplice-corroboration instruction along with the presumed deficiencies in counsel's failure to request that instruction and failure to object to the alleged hearsay testimony by Detective Stephens and Thomas, see *Finney v. State*, 311 Ga. 1, 13 (3) (a) n.27 (855 SE2d 578) (2021), we conclude that Payne has not demonstrated a reasonable probability that, but for these failures, the outcome of the proceeding would have been different. As noted above, the alleged hearsay was cumulative of Dodson's interview. The evidence did not support a conclusion that Dodson was an accomplice to the murder. The jury heard a

significant amount of incriminating testimony that was neither the alleged hearsay testimony by Detective Stephens and Thomas nor statements by accomplices. Payne has not shown a reasonable probability that the jury convicted him based on the uncorroborated statement of a single witness who was an accomplice or that the result of the trial would have been different in the absence of the alleged hearsay.

*Judgment affirmed. All the Justices concur.*

Decided August 9, 2022.

Murder. Fulton Superior Court. Before Judge Cox.

*Arora Law Firm, Manubir S. Arora, Devin A. Rafus*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Karen S. Bemis, Juliana Y. Sleeper, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.