**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia


Decided: November 4, 2025


S25A1205. STITTS v. THE STATE.

PETERSON, Chief Justice.

Tianvye Stitts appeals his convictions for malice murder and other crimes in connection with the shooting death of Darcy Jones.[1]

---

[1] Jones was killed on November 14, 2020. In August 2021, a Fulton County grand jury charged Stitts with malice murder (Count 1), two counts of felony murder (Counts 2 and 3), aggravated assault with a deadly weapon (Count 4), possession of a firearm during the commission of a felony (Count 5), possession of a firearm by a convicted felon (Count 6), and giving a false name, address, or birthdate to law enforcement (Count 9). The indictment also charged Darrence Morgan with possession of a firearm by a convicted felon (Count 7) and false statements (Count 8). Morgan entered a guilty plea as to Count 7 and testified at Stitts's May 2023 trial. At that trial, a jury found Stitts guilty on all counts. Stitts was sentenced to serve life in prison with the possibility of parole on Count 1, a 20-year concurrent prison term for Count 4, two consecutive 5-year prison terms for Counts 5 and 6, and a 12-month prison term for Count 9 that was commuted to time served. The felony murder counts were vacated by operation of law. Stitts timely filed a motion for new trial, which he later amended. After an evidentiary hearing on the motion, the trial court corrected Stitts's sentence to merge Count 4 with Count 1. The trial court denied the motion for new trial on March 31, 2025. Stitts timely appealed, and his appeal was docketed to this Court's August 2025 term and submitted for a decision on the briefs.

Stitts argues that the evidence was insufficient to support the malice murder conviction, and the jury's verdicts should be overturned on the general grounds. He also argues that the trial court plainly erred in failing to charge the jury on accomplice corroboration, in giving an *Allen*[2] charge, and in failing to charge the jury as to impeachment by a prior conviction. Stitts also raises ineffective assistance of counsel claims for failing to object to certain jury instructions. Because none of these claims have merit, we affirm.

1. *The trial evidence*

Viewed in the light most favorable to the verdicts, the trial evidence showed the following. On the night of November 13, 2020, Stitts drove his girlfriend, Shaneka Soucy, to work at Bodega, a nightclub in South Fulton. Soucy said that she typically worked from about 9:00 or 10:00 p.m. until 6:00 or 7:00 a.m. Stitts drove Soucy's Jeep and dropped her off in the back parking lot.

Stitts also worked at the club as a security guard and worked

---

[2] *Allen v. United States*, 164 US 492 (1896).

that night even though he was not originally scheduled to. Stitts was part of a security team that was unarmed and responsible for diffusing situations inside the club. Soucy said that after Stitts dropped her off, she next saw him midway through her shift.

At some point on the night of November 13 or in the early morning hours of November 14, Tiffany Respess arrived at the club with a friend, and she interacted with Derrance Morgan, a friend of hers and a convicted felon who was working as a security guard for Bodega that night. Morgan came into possession of Respess's gun, a purple 9mm handgun.[3]

Sometime during Soucy's shift, she gave Morgan the keys to her Jeep so he could move it to a spot behind Bodega in order to keep customers from parking there. According to Soucy, several hours

---

[3] Morgan and Respess offered differing accounts of that exchange. Respess testified that Morgan asked whether she had her gun, and when she said that she did, he went to retrieve it from her car, reminding her that her gun had been stolen before. Morgan testified that he saw Respess carrying her gun as she was approaching the club and he asked her to give it to him since she could not take it into the club. Morgan said that he then immediately gave the gun to Stitts so that Morgan could deal with a situation in the parking lot. Respess, however, said that she saw Morgan carrying the gun on his hip sometime later when she was smoking with him in the club.

later, she saw people running around the club on account of a shooting inside the club.

Kasseem Gibson, a security guard who was working at the front door, testified that he heard three gunshots in quick succession, and when he turned towards the back of the club, he heard another two gunshots and then saw a person later identified as Jones collapse as he exited the restroom and Stitts walk out of the bathroom "right behind him." Jones died from gunshot wounds to his torso. Gibson testified that he was looking directly at Stitts when he came out of the restroom and saw Stitts tuck a gun into his pants while standing right by Jones's body. Stitts stood there for several seconds before running out through the back door. Gibson said that he was "100 percent certain" in identifying Stitts as the shooter. Gibson went out the front door and saw Stitts running across the lot and "going crazy."

One of the managers of Bodega, Muhammad Rahman, said that he was walking to the restroom when he heard gunshots and saw Jones stumble out of the restroom. Rahman next saw a security

4

guard, whose name Rahman did not know, come out of the bathroom and get "back on post" by the backdoor. Rahman looked at the victim and then at the guard, and when he established eye contact with the security guard, the guard ran out of the back door. Rahman said that the victim and the guard were the only two people in the bathroom. Rahman did not see the guard again because he began trying to clear the building.[4]

The owner of Bodega said that he was standing by the front door when he heard the gunshots. When he went to the back of the club and looked out the back door, he saw Stitts driving away in a Jeep. Stitts hit several cars as he fled; the owner described Stitts's driving as "sporadic" and "hysterical." The owner did not see anyone else driving away from the back parking lot.

Law enforcement arrived to find Jones's body outside the bathroom and recovered three 9mm Ruger shell casings inside the bathroom. Respess and Morgan talked to police, and Respess

---

[4] At trial, Rahman did not identify Stitts as the security guard he saw come out of the restroom after the victim.

reported that her gun was stolen. Morgan denied having Respess's gun inside the club and maintained that he had given it to Stitts. Law enforcement observed the damage to several cars parked behind Bodega and identified Stitts as the suspect in the shooting.

Upon fleeing the scene, Stitts was next spotted in a neighborhood in College Park. There, at approximately 2:40 a.m. on November 14, 2020, a security camera from Melanie Wilbourn's residence recorded Stitts repeatedly ringing the doorbell. Nathan Stewart, who also lived at the residence, did not get a good look at the person ringing the doorbell, but told the person to leave. Wilborn said that the person ringing the doorbell motioned to ask Wilborn to use her phone before running off into the woods. Wilborn saved the security footage and gave it to police. The footage, as well as still shots of the surveillance video, were admitted into evidence and shown to the jury. Soucy's Jeep, which Stitts fled in, was found close to Wilbourn's residence and was parked "weirdly."

Later in the afternoon of November 14, Gibson was at home when Stitts walked up to Gibson's bedroom window and asked to

come inside. Gibson asked Stitts about the "crazy" night at Bodega to see what Stitts would say, stating that a "young boy" was killed and that people were saying that Stitts was responsible. Stitts denied it. Stitts left when Gibson said he had to go to work, and Gibson told his roommate to not let Stitts inside their apartment. Later, Gibson learned that Stitts was in Gibson's apartment, so he called the police who arrested Stitts there. Stitts gave police a false name.

2. *Sufficiency of the evidence*

Stitts argues on appeal that the evidence was insufficient to support his malice murder conviction.[5] Stitts cites *Jackson v. Virginia*, 443 US 307 (1979), and argues that the *Jackson* standard was not met because there were no eyewitnesses to the killing and the State's case rested on uncorroborated testimony of Morgan, who Stitts claims was an accomplice. Even if the *Jackson* standard

---

[5] Because we generally do not review evidentiary sufficiency sua sponte in non-death-penalty cases, we limit our sufficiency review to only those counts asserted on appeal. See, e.g., *Morrell v. State*, 318 Ga. 244, 246 n.3 (2024).

required accomplice corroboration, the evidence was sufficient here.

In considering a claim that evidence was not sufficient as a matter of federal due process under *Jackson*, "our review is limited to an evaluation of whether the trial evidence, when viewed in the light most favorable to the verdicts, is sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Goodman v. State*, 313 Ga. 762, 766 (2022) (quotation marks omitted). "We put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." Id. at 766–67 (quotation marks omitted).

As a matter of Georgia statutory law, the testimony of a single witness is generally sufficient to establish a fact. OCGA § 24-14-8. But in felony cases where the only witness implicating the defendant is an accomplice, "testimony by the accomplice must be corroborated by other evidence implicating the defendant." *Bowdery v. State*, 321 Ga. 890, 896 (2025) (cleaned up).

8

We have held that a sufficiency analysis under federal due process is different from and does not include the state requirement imposed by OCGA § 24-14-8. See, e.g., *Copeland v. State*, 314 Ga. 44, 48 (2022). But even assuming that federal due process did include the OCGA § 24-14-8 requirement, that Morgan was an accomplice, and that Morgan's testimony needed to be corroborated under OCGA § 24-14-8,[6] that requirement has been satisfied here.

Here, the thrust of Morgan's testimony was that he gave a gun to Stitts while Stitts was working at the club. Several witnesses confirmed that Stitts was working that night as "inside security" and Gibson saw him with a gun, even though inside security guards were supposed to be unarmed.

---

[6] Recently, some members of the Court have expressed doubt as to whether we were right to conclude that federal constitutional sufficiency review properly excludes state-law evidentiary rules, such as OCGA § 24-14-8. See *Baker v. State*, 320 Ga. 156, 165 n.3 (2024). We declined to resolve those doubts in *Baker*, and do so again today, because even if we consider the accomplice-corroboration rule in the due process sufficiency analysis, the evidence is sufficient.

Although Stitts refers to the OCGA § 24-14-8 requirement, he makes no argument referring to OCGA § 24-14-6, which requires a case based on circumstantial evidence to exclude every reasonable hypothesis save that of guilt. Thus, we do not consider OCGA § 24-14-6 in our sufficiency analysis.

9

Stitts's argument is based on the incorrect premise that Morgan was the main source of evidence against him. Setting Morgan's testimony aside, the evidence was sufficient. At least two witnesses — Gibson and Rahman — testified that after hearing the gunshots, a person working as a security guard came out of the restroom after the victim fell out, the security guard and the victim were the only two people in the restroom, and the security guard fled from the club afterward. Gibson specifically identified Stitts and said that he was certain it was Stitts who was responsible for shooting the victim. Other witnesses saw Stitts fleeing from the scene in Soucy's Jeep, crashing into several cars in the process. Thus, although no witness saw Stitts shoot the victim, Gibson's and Rahman's testimony was strong circumstantial evidence that he did. Additionally, Stitts's flight from the crime scene and his attempt to evade detection by providing a false name is evidence of guilt. See *Jenkins v. State*, 313 Ga. 81, 89 (2022) (evidence of flight, concealment, assumption of a false name, and other related conduct is evidence of guilt). Thus, even if Morgan was an accomplice, his

testimony was corroborated by independent evidence, and the collective evidence of guilt was sufficient to support the malice murder conviction. See *Fisher v. State*, 309 Ga. 814, 821 (2020) (non-accomplice descriptions of the shooter, as well as defendant's flight after the shooting, was sufficient to corroborate accomplice testimony); see also *Hooks v. State*, 318 Ga. 850, 852 (2024) ("[C]ircumstantial evidence alone can be constitutionally sufficient[.]").

3. *General grounds*

Stitts argues that the trial court should have granted a new trial under OCGA §§ 5-5-20 and 5-5-21, commonly known as the "general grounds." But the decision to grant a new trial on the general grounds is vested solely in the trial court. See *Muse v. State*, 316 Ga. 639, 653 (2023). Because the record reflects that the trial court understood its authority to grant a new trial on the general grounds and exercised it, this claim presents nothing for us to review. Id.

4. *Lack of an accomplice-corroboration charge*

11

Stitts argues that because Morgan admitted giving Stitts a gun prior to the shooting, he was an accomplice, and the trial court was required to instruct the jury under OCGA § 24-14-8 that the testimony of an accomplice must be corroborated to establish a fact. Stitts asked the trial court to give his requested instruction on accomplice corroboration, but the trial court declined to do so based on its conclusion that there was no evidence showing that Morgan was an accomplice. Stitts did not object to the lack of an accomplice-corroboration charge after the trial court gave its instructions to the jury. Because Stitts did not object to the charge as given, he concedes that we can review his claim only for plain error. See *Payne v. State*, 314 Ga. 322, 325 (2022); see also *White v. State*, 291 Ga. 7, 8 (2012) (an objection voiced at the charge conference does not preserve objections to the charge as subsequently given, so challenge for failure to give a requested charge in such cases is reviewed for plain error); *Wilson v. State*, 259 Ga. 55, 58 (1989) (defendant failed to preserve refusal to give requested jury instruction where he failed to renew objection after the charge was given).

To show plain error, the appellant must demonstrate that the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be. This Court does not have to analyze all elements of the plain-error test where an appellant fails to establish one of them.

*Payne*, 314 Ga. at 325 (citation omitted).

Even if there was slight evidence that Morgan was an accomplice such that the trial court erred by not giving the accomplice-corroboration charge,[7] we cannot say that any such error affected the outcome of the proceedings. Here, most of the incriminating testimony came from Gibson and Rahman, and Stitts points to no evidence that these two witnesses were accomplices to

---

[7] "To authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge." *Hamm v. State*, 294 Ga. 791, 794 (2014) (quotation marks omitted). "In considering whether a witness is an accomplice, we look to the definition of party to a crime found in OCGA § 16-2-20, such that there must be some evidence that the witness shared with the defendant a common criminal intent to commit the crimes in question." *Payne*, 314 Ga. at 326 (cleaned up). Although there is no evidence that Morgan gave Stitts the gun for the purpose of killing Jones, there is evidence that Morgan specifically asked for Respess's gun (which Morgan disputes) and he moved Soucy's Jeep to park it right behind the club sometime before Stitts fled in it. We need not resolve whether this evidence was sufficient to support a finding that Morgan was Stitts's accomplice.

13

Jones's murder. Thus, Morgan's testimony was not so critical to the State's case that it was likely that the jury convicted him based on Morgan's testimony alone. See *Payne*, 314 Ga. at 326 ("Where accomplice testimony is the 'bedrock' of the conviction, it may be likely that the jury convicted the defendant on the accomplice's testimony alone." (cleaned up)). Moreover, because multiple witnesses more directly implicated Stitts or otherwise corroborated Morgan's testimony, the lack of an accomplice-corroboration charge did not likely affect the outcome of the trial. Compare *Hawkins v. State*, 304 Ga. 299, 303 (2018) (although failure to give accomplice-corroboration charge was clear or obvious error, it did not likely affect the outcome of the trial because, outside of the accomplice's testimony, "there was significant and consistent evidence" that specifically connected the defendant to the crime), with *State v. Johnson*, 305 Ga. 237, 241 (2019) ("[B]ecause virtually all of the incriminating evidence flowed from [the accomplice], the outcome of the trial court proceedings was 'likely affected' by the trial court's failure to provide an accomplice corroboration charge to the jury,

14

and a proper instruction would likely have resulted in a different verdict."), and *Stanbury v. State*, 299 Ga. 125, 131 (2016) (the omission of the accomplice-corroboration charge likely affected the outcome of the trial where the accomplice "was the only witness who affirmatively identified [the defendant] as the second man inside the house who robbed and shot" the victim). Therefore, there was no plain error, and this claim fails.

5. *Allen charge*

Stitts argues that when the jury indicated it could not agree after less than a full day of deliberations, the trial court erred in giving an *Allen* charge, sending the jury home for the day, and then giving the *Allen* charge again before the jury started deliberating the next day. Stitts argues that the trial court should have declared a mistrial instead. Stitts has not preserved this issue for review.

The record shows that Stitts twice asked the court to dismiss the jury when it informed the court that it was undecided midway through the first full day of deliberations and again at the end of that day. The court told the parties that it would conduct an inquiry

into the nature of the jury's deadlock and would give an *Allen* charge if the jury was "hopelessly deadlocked." Stitts agreed, stating that "it doesn't appear as though a mistrial is imminent." After conducting that inquiry, the trial court gave an *Allen* charge, with no objection from Stitts. The jury was sent home, and the following morning, the trial court told the parties that it intended to give a portion of the pattern *Allen* charge, but Stitts asked the court to give a more complete *Allen* charge. The trial court did so, again with no objection from Stitts.

Even if Stitts's initial request to dismiss the jury (after it sent notes saying it was undecided) could be construed as a motion for a mistrial, he agreed with the court's course of action to conduct an inquiry into the possible deadlock and, more importantly, conceded that a mistrial was "not imminent." At no point thereafter did Stitts move for a mistrial. Thus, his claim that the trial court erred in refusing to grant a mistrial was not preserved. See *Hartsfield v. State*, 294 Ga. 883, 886 (2014) (defendant failed to preserve issue for appellate review by failing to renew motion for mistrial after court

16

administered its curative instruction).

6. *Jury instruction on impeachment by a felony conviction*

Stitts argues that his "codefendant" and "main" witness for the State (i.e., Morgan) pleaded guilty to possession of a firearm by a convicted felon prior to Stitts's trial, and as a result, the trial court should have charged the jury that a witness can be impeached by a prior felony conviction. Stitts made no objection, so we review his claim only for plain error. See, e.g., *White*, 291 Ga. at 8.

Stitts's claim fails because there was no clear and obvious error. When charging the jury on witness credibility, the court specifically instructed the jury that it could consider a witness's felony conviction, as shown by proof that the witness has been convicted of a felony. Later, the trial court instructed the jury that possession of a firearm by a convicted felon was a felony.

We read jury instructions as a whole to determine whether the instructions were erroneous. See *Clark v. State*, 315 Ga. 423, 440 (2023) ("In evaluating a claim that the trial court was required to give certain jury instructions, we view the charge as a whole to

17

determine whether the jury was fully and fairly instructed." (quotation marks omitted)). So viewed, the jury instructions given here sufficiently informed the jury that it could consider Morgan's felony conviction in assessing his credibility. And because Stitts does not say what specific language the court should have used instead of the given charge, he has not shown a clear and obvious error in this charge. See, e.g., *Baker v. State*, 319 Ga. 456, 462 (2024) (jury charge instructing the jury to consider a witness's "interest or lack of interest in the case" substantially covered the omitted charge on witness bias such that there was no plain error in failing to give the additional charge); see also *Thomas v. State*, 297 Ga. 750, 754–55 (2015) ("Failure to give a requested jury charge in the precise language requested does not warrant reversal where the charge given substantially covers the applicable principles of law." (quotation marks omitted)).

7. *Claims that trial counsel was ineffective*

Stitts argues that trial counsel was ineffective for two reasons, which we discuss below. Neither claim has merit.

To prevail on his ineffectiveness claim, Stitts must show that (1) his trial counsel's performance was constitutionally deficient and (2) he was prejudiced by counsel's deficient performance. See *Strickland v. Washington*, 466 US 668, 687 (1984). If Stitts fails to establish one of these two prongs, "we need not examine the other." *Robinson v. State*, 308 Ga. 543, 553 (2020). To show deficient performance, the defendant must demonstrate that counsel performed counsel's duties in an objectively unreasonable way, considering all of the circumstances and in the light of prevailing professional norms. See *Strickland*, 466 US at 687–88. In evaluating alleged deficiency, we afford a "strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Wright v. State*, 314 Ga. 355, 357 (2022) (quotation marks omitted). And "decisions about trial tactics and strategy in particular may not form the basis of an ineffectiveness claim unless they were so patently unreasonable that no competent attorney would have followed such a course."

*Warren v. State*, 314 Ga. 598, 602 (2022) (quotation marks omitted).

To establish prejudice, Stitts "must show that there is a reasonable probability that, but for counsel's unprofessional error[ ], the result of the proceeding would have been different." *Strickland*, 466 US at 694. "In reviewing a ruling on a claim of ineffective assistance of counsel, we defer to the trial court's findings of fact unless they are clearly erroneous, but we apply the law to the facts de novo." *State v. Spratlin*, 305 Ga. 585, 591 (2019).

(a) *Failure to object to omission of accomplice-corroboration charge*

Stitts argues that trial counsel was ineffective for failing to object to the lack of an accomplice-corroboration charge. We disagree.

As mentioned above, trial counsel did not object to the lack of accomplice-corroboration charge after the court refused to give this charge based on its conclusion that there was no evidence establishing that Morgan was an accomplice. The record shows that Stitts's defense at trial was that someone else, namely Gibson or

Morgan (individually or collectively), committed the shooting without Stitts's involvement, and that he fled because he was scared. Because an accomplice-corroboration charge would have conflicted with the defense theory, trial counsel's failure to object to the lack of such a charge was not objectively unreasonable and thus was not deficient performance. See *Hardy v. State*, 317 Ga. 736, 741–42 (2023) (trial counsel was not deficient where an accomplice-corroboration charge would have conflicted with the defense theory); *Manner v. State*, 302 Ga. 877, 883–84 (2017) (trial counsel was not deficient for withdrawing the request to charge on accomplice corroboration because it was not objectively unreasonable for counsel to conclude that any benefit to the defendant in the charge "was outweighed by the instruction's potential conflict with the theory of defense").

(b) *Failure to object to the lack of a specific charge on impeachment by a felony conviction*

Stitts argues that trial counsel was ineffective for failing to object to the lack of a jury charge on impeachment by a felony

conviction. We disagree.

Although Stitts raised this ineffectiveness ground in his amended motion for new trial, the trial court did not rule on it. Although we often remand for consideration of unresolved issues, a remand is unnecessary here because we can determine from the record that Stitts cannot meet the *Strickland* test. See *Lane v. State*, 312 Ga. 619, 623 (2021). As discussed above, the jury charges that were given adequately informed the jury that it could consider a witness's felony conviction in determining that witness's credibility. Therefore, Stitts cannot establish that it was objectively unreasonable to forgo objecting to the charge as given, and his ineffective assistance of counsel claim on this ground fails.

*Judgment affirmed. All the Justices concur.*